JOSEPH O. CARTER and GEORGE R. CARTER, Trustees under the Will of H. A. P. Carter, Deceased, *v.* FRANCES CREHORE, AGNES C. GALT, CORDELIA J. CARTER and SIBYL A. CARTER.

APPEAL FROM CIRCUIT JUDGE, FIRST CIRCUIT.

SUBMITTED JUNE 19, 1899.　　　DECIDED FEBRUARY 27, 1900.

FREAR AND WHITING, J.J., AND CIRCUIT JUDGE PERRY IN PLACE OF JUDD, C.J., DISQUALIFIED.

A testator bequeathed, as part of the residue of his estate, shares of stock in a corporation to trustees in trust to pay the income thereof to certain persons for life with remainder over. The corporation afterwards issued a stock dividend of two shares of new stock for every three shares of old stock and appropriated as payment therefor at par an equal amount of its net earnings all of which had accumulated since the death of the testator. The old stock before the issue of the new stock was at a premium of over $400 a share and after the new issue the stock was at a premium of over $200 a share.

Held, that so much of the new stock held by the trustees as represented earnings, that is, up to the par value of the new stock, should go to

the life tenants and that the balance representing the right to take the new stock at par or the depreciation in the value of the old stock should be held as part of the corpus of the trust.

### OPINION OF THE COURT BY FREAR, J.

This is a bill in equity brought by the trustees under the will of the late H. A. P. Carter for instructions as to the disposition to be made of a stock dividend as between life tenants and remaindermen.

The facts are uncontested and as shown by the bill, answer and evidence are as follows: The testator by his will, which was probated December 30, 1891, after making certain specific bequests, devised and bequeathed the residue of his estate to the plaintiffs as trustees to hold one-sixth thereof in trust for each of the defendants and the plaintiff Geo. R. Carter, the income thereof to be paid to him or her for life and after his or her death the said one-sixth to go to his or her heirs. A part of this property consisted of 875 shares of stock in C. Brewer & Company, Limited, a Hawaiian corporation, with a capital stock of $600,-000 divided into 6,000 shares of the par value of $100 each. On December 31, 1892, a year after the will was probated, the balance of the profit and loss account was $22,234.37, and during the next six years, ending December 31, 1898, the net earnings of the company amounted to $1,582,699.49, making a total of $1,604,933.86 profits, of which, during the same period, $600,-000 (100%) were paid out in cash dividends, $1,766.93 written off as bad debts, $350,000 carried to revenue account, and $400,-000 paid as a stock dividend as hereinafter set forth, leaving $253,166.93 as the balance of profit and loss account. On October 10, 1898, the corporation adopted the following resolution: "That the capital stock be increased to one million dollars ($1,000,000) on December 31, 1898, and that a stock dividend of $400,000 be made pro rata to the shareholders as of December 26, 1898. That no fractional shares be issued. That any fractional shares existing on December 26, 1898, be sold forthwith at public auction for the benefit of owners and that all old certifi-

cates of stock be called in for the purpose of issuing a new and uniform certificate for old stock." The trustees as holders of 875 shares of the old stock were entitled to 583 shares of the new stock issued as a dividend. In 1896 the shares sold at $250 each; in 1897 at $350; in 1898 at from $500 to $550; and in January, 1899, after the increase in the capital stock, at from $385 to $350.

The question is whether the new stock issued as a dividend should be regarded as a part of the corpus of the estate to be held by the trustees for the remaindermen, the life beneficiaries to receive only the income thereof during their lives, or whether the new stock itself or any part thereof should be regarded as income to be delivered to the life beneficiaries under the will.

The Circuit Judge from whom the case comes on appeal held that all the new stock should go to the life tenants.

There is no lack of authorities upon this question but it is doubtful if there is any question in regard to which the authorities are in greater conflict.

Questions of this kind usually arise under wills or trust deeds which give property to trustees in trust to pay the income thereof to one for life and at his death to turn over the principal or corpus to another. The question is therefore primarily a question of the construction of the will or trust deed with a view to ascertaining the intention of the testator or grantor. That intention will be given effect if not in contravention of rules of law. Of course the creator of the trust cannot interfere with the internal management of the corporation as to when or in what form dividends shall be declared. But he may direct to whom they shall go when once they have been declared, whether they are ordinary or extraordinary, cash or stock, and whether they have been earned by the corporation before or after the creation of the trust. All the authorities agree upon this.

But usually the creator of the trust does not contemplate extraordinary dividends, whether cash or stock, or have in mind the particular period during which the profits out of which they are paid were earned, and therefore he makes no special provision

in regard to them. He usually, as in the present case, directs merely that the income, dividends, proceeds or profits, as the case may be, shall be paid to one for life with remainder over to another. What then shall be done with dividends in regard to which he had no special thought one way or the other? In other words what is to be considered as income from the stock within the meaning of the instrument creating the trust and within the general intention of the creator of the trust?

Of course if a so-called dividend is made of the whole or a part of the *capital* of a corporation, whether in cash or other property, or if a stock dividend is made to represent merely the increase in value of the property of the corporation through natural causes and apart from accumulated earnings, it is considered a part of the corpus of the trust to be kept for the remainderman, only the income thereof to go meanwhile to the life tenant, for, although called a dividend, it is in fact not a dividend proper (which can be paid only from earnings) but a distribution of capital or a change in the evidence of the ownership of capital, and courts everywhere agree that they should look through the form to the substance in cases of this kind. A dividend of this kind not only is not income to the shareholder, it is not even paid out of what is income to the corporation, and the creator of the trust can not be supposed to have intended that it should be considered income or dividend merely because the corporation or its directors have called it by that name.

So, on the other hand, if a dividend is paid from earnings and is an ordinary cash dividend, there is no doubt as to whom it should go. For, the creator of the trust, having such dividends principally in mind, must be presumed, in the absence of any indication to the contrary, to intend that they should follow the usual familiar course and go to the one entitled at the time they are declared. Accordingly, such dividends are held not apportionable. If declared during the life tenancy they go wholly to the life tenant even though earned by the corporation wholly or in part before the creation of the trust. If declared after the termination of the life tenancy they go to the remainderman

though earned during the life tenancy. The authorities agree upon this also. This naturally follows from the distinction between a corporation and its shareholders. Earnings of a corporation are not income to the shareholders until a dividend is declared. Those earnings are variable and cannot be assumed to have been earned at the same rate daily through any given period of time, nor is it feasible to investigate the affairs of a corporation whenever an ordinary dividend is paid in order to ascertain when the profits out of which it is paid were earned, for the purpose of apportioning it between successive owners of the stock.

But with regard to unusual dividends, there is great diversity of opinion. There are at least four different views as to the general rule that should be followed.

First, the early English rule, established in 1799 in *Brander v. Brander*, 4 Ves. 800, adopted a few years later by the House of Lords in *Irving v. Houston*, 4 Paton, Sc. App. 521, and followed in many subsequent cases. By this rule all extraordinary dividends or bonuses, as they were called, cash as well as stock, were held for the remainderman, the life tenant meanwhile receiving only the income thereof. There has been some difference of opinion as to the extent to which this rule applied and as to the reasoning upon which it was based, but, as shown by what may now be considered the principal English case upon this subject, *Bouch v. Sproule*, L. R. 12 App. Cas. 385, decided by the House of Lords in 1887, the following is the view now taken in England as to this early rule: Certain corporations had no power to increase their stock; this was inconvenient, especially as circumstances might compel them to reduce their ordinary dividends; therefore they accumulated profits and used them for capital purposes, often investing them in securities that could be turned into cash at pleasure; every one who had to do with stocks knew this and if a person gave stocks to a trustee in trust to pay the income to one for life, he could scarcely intend that the life tenant should run away with the bonus that had been accumulating perhaps for years and that had been regarded as in the nature

of capital; and if the profits had accumulated after the creation of the trust and were paid out during the life tenancy, unless that fact clearly appeared from the action of the corporation and such profits were paid out expressly as profits, they were still regarded as capital, on the presumption that they had been accumulating for some time and had been considered as converted into capital and because of the impracticability of ascertaining what was earned and accumulated before and what after the creation of the trust. Under this rule the dividend now in question would all be held for the remaindermen. And so would it even if it had been paid in cash. But this rule has been regarded as unjust to the life tenant and, at least as to cash dividends, in conflict with the principles of corporation law that earnings are not technically capital and that dividends may always be paid out of them so long as they have not been converted into capital represented by stock and that dividends when declared go to the person entitled at the time irrespective of when they were earned. Accordingly this rule has never been followed in the United States and is now regarded with such disfavor in England that it is considered as resting solely on authority and not to be extended beyond the class of cases in respect of which it was established, namely, those in which the corporation has no power to increase its stock. *Bouch v. Sproule, supra.*

Secondly, the present English rule. This rule has special application to corporations that may increase their capital stock. It lays emphasis upon the powers and intention of the corporation. Since the corporation may increase its stock, then, unless it has done so, it is not considered as having intended to convert or as having converted its accumulated earnings into capital. And since it has the power either to distribute its profits as dividends or to convert them into capital, then, if it validly exercises this power, such exercise is binding on all persons interested in the stock, and if a person creates a trust as to stock in a corporation having such power, he must be presumed to intend that the rights of those interested in the trust shall be subject to and determined by the valid exercise of such power, and therefore such

profits as are paid by the corporation as dividends go to the life tenant and such as are appropriated as capital are held for the benefit of all interested in the capital, that is, they are held by the trustees to pay the income thereof to the life tenant for life and then to turn over the corpus to the remainderman. *Bouch v. Sproule, supra.* Under this rule, as under the other rules, the first question considered is, what is the intention of the creator of the trust? Then, if, as in the present case, he has given no special directions, he is presumed to have intended that things shall take their usual course under corporation law. The question then becomes one of corporation law. The reasoning then is this: The shareholder is distinct from the corporation; nothing is income to him until so declared by the corporation; the corporation may determine whether earnings shall be capital or dividend; therefore earnings that the corporation says shall be capital are capital, and those that it says shall be dividends are dividends. Therefore the prime question under this rule is, what was the intention of the corporation?

The presumption is that a distribution of earnings in cash is intended as a dividend and is income, for such is usually the case and ordinarily a corporation cannot pay out its capital except when in liquidation; and that a distribution of stock representing earnings is intended as a capitalization of those earnings, for a stock dividend takes nothing from the property of the corporation and adds nothing to the interests of the shareholders and both before and after such dividend the corporation owns the entire property and the aggregate interests of the shareholders are represented by the whole number of shares and their proportional interests remain the same; there is a change merely in the evidence of the ownership, a larger number of shares being held by the same person but representing the same interest. The substance rather than the form of the transaction is regarded. The real intention of the corporation is ascertained from what it does rather than from what it says.

In *Bouch v. Sproule, supra,* there was a distribution of stock and it was called a dividend, but the court, after considering all

the circumstances, held that it was capital, because the company did not really intend to pay out any dividend but intended merely to permanently capitalize part of its earnings. In *Re Alsbury*, L. R. 45 Ch. D. 237, (1890), several extraordinary dividends were paid in cash and the court held that they were income and not capital, because the company so intended. In each of these cases, the court considered it immaterial when the profits were earned. In *Re Armitage*, (1893), 3 Ch. 337, a company was wound up and sold its assets for enough to pay in cash to its shareholders the amount of capital paid in and an additional sum representing profits. It was all held to be capital because the company had not declared a dividend,—as it could not after going into liquidation. The surplus was held to be capital just as the premium that might have been realized in case the trustee had sold the stock at a premium while the company was a going concern would have been capital, or just as the surplus would have been capital in case the life tenant had died before the distribution was made. For nothing is income of the stock until so declared by the company. In *Re Malam*, (1894), 3 Ch. 578, a dividend was declared, half of which was paid in cash, and the other half of which was offered in stock to the shareholders, but such as so preferred could take cash instead of stock. The company was in a position to pay cash. The trustee elected to take stock. The court held that the company really intended to pay a dividend and that so much of the value of the new shares as represented the dividend applied by the trustees in taking up the stock was income and the rest capital.

The present English rule is followed in Massachusetts. In *Minot v. Paine*, 99 Mass. 101, a stock dividend was held to be capital. The court said, among other things: "A simple rule is, to regard cash dividends, however large, as income, and stock dividends, however made, as capital." This is generally called the Massachusetts rule and is characterized as possessing the merit of simplicity, but the demerit of injustice. But, as shown by other cases, that is not the rule followed in Massachusetts. In that State as in England the substance and not merely the form

is regarded, but also as in England the action of the corporation in deciding whether earnings shall be capital or income is conclusive. In *Daland v. Williams*, 101 Mass. 571, the company could not under the law declare a stock dividend, as it wished to do, and so it declared a cash dividend to be received back in payment for new stock. The company was not in a position to pay the cash and did not expect to, nor was it expected that any shareholder would want it to keep instead of the stock, as the stock was above par, and it was assumed that shareholders did not have the alternative of selling the right to take the new stock. The court held that the declaration of the cash dividend was merely a form to comply with the letter of the law and that the company really intended to capitalize its earnings and that therefore the new stock should be treated as capital. See also *Rand v. Hubbell*, 115 Mass 461. In *Leland v. Hayden*, 102 Mass. 542, the company declared a stock dividend out of its own stock which it had purchased in the market with its earnings and which was owned by it in its corporate capacity like any other property. This was held to be income, the same as if the stock had been stock in a different company or other property or had been sold and the proceeds paid out. The company also issued new stock which the shareholders could take at par or allow to be sold for their benefit. This was held to be capital, whether the trustees took the stock or the cash. In *Heard v. Eldridge*, 109 Mass. 258, a cash dividend was paid out of the proceeds of real estate taken by right of eminent domain. It was held to be capital, as it was really a distribution of the capital of the company. In *Davis v. Jackson*, 152 Mass. 58, a cash dividend was declared, with the right on the part of each shareholder to take at par an equal amount of new stock issued at the same time or retain the cash and sell the right to take the new stock. It was held that the cash dividend would be income and that the proceeds of a sale of the right to take new stock at par would be capital.

The present English rule is followed also in Connecticut (*Mills v. Britton*, 64 Conn. 4), in Rhode Island (*Brown v. Larned*, 14 R. I. 371; *Greene v. Smith*, 17 R. I. 29), in the District of

Columbia (*Gibbons v. Mahon,* 4 Mackey 130, 54 Am. R. 262), and by the Supreme Court of the United States (*Gibbons v. Mahon,* 136 U. S. 549). The courts of Maine and Georgia also are claimed as supporting this rule, but the decision in each of the cases usually cited (*Millen v. Guerrard,* 67 Ga. 284, 44 Am. R. 720, and *Richardson v. Richardson,* 75 Me. 570) was merely that an extraordinary dividend (not stock) declared during the life tenancy went to the life tenant irrespective of the time when it was earned. Those cases had nothing to do with stock dividends, though these were referred to incidentally. In Georgia the statute expressly provided that new stock should attach to the corpus and go to the remainderman. And in Maine in a later case, *Gilkey v. Paine,* 80 Me. 319, the court said: "A rule supposed to have been established in *Minot v. Paine,* 99 Mass. 101, and known as the Massachusetts rule, is that, stock dividends are to be regarded as principal, and cash dividends as income. But this has proved to be very elastic rule, in the state of its origin; for in *Leland v. Hayden,* 102 Mass. 542, while professing to adhere to it, the court did in fact treat a cash dividend as capital, and a stock dividend as income. The effort in this country has been generally, to maintain the integrity of the capital, and to give all surplus earnings, in whatever form distributed, to the life tenant. And, perhaps, no better rule than this can be adopted." Thus, the courts of Maine and Georgia can hardly be classed thus far as supporting this rule. Under this rule, as under the early English rule, though for different reasons, the dividend now in question would all be held for the remainderman.

Thirdly, the Pennsylvania rule. This is sometimes called, but inappropriately, the American rule. As we have seen, the early English rule gave all extraordinary dividends, cash or stock, to the remainderman on the grounds that the testator must have regarded as capital the earnings accumulated before his death and used as actual capital though not represented by stock and that it was impracticable to ascertain what were earned before and what after his death. And the later English rule gives all cash dividends to the life tenant and holds . all stock dividends

for the remainderman, because earnings belong to the corporation and are represented by the stock and are not income to the stockholders until set aside as dividends and dividends when declared go under corporation law to the person entitled at the time, and the testator must have intended that earnings should be considered capital or income according to the usual rules of corporation law. The Pennsylvania rule holds, with the later English rule, that earnings are not income to the shareholder until so appropriated by the corporation, but does not go to the extent of that rule in holding that such appropriation when made is conclusive as between the life tenant and remainderman or that the testator must have intended that the mere way in which the corporation appropriated earnings, should determine whether they should go to the life tenant or remainderman; and holds on the other hand, with the early English rule, that the testator must have regarded the accumulations of earnings at the time of his death as capital to be held for the remainderman, but does not go to the extent of that rule in holding that it is impracticable to ascertain what was earned before and what after his death. Accordingly the Pennsylvania rule when an extraordinary dividend is declared, whether in cash or stock, apportions it, giving to the life tenant what was earned during the life tenancy and holding for the remainderman what are earned before the life tenancy began. *Earp's Appeal*, 28 Pa. St. 368; *Moss' Appeal*, 83 Pa. St. 269; *Biddle's Appeal*, 99 Pa. St. 278; *Oliver's Estate*, 136 Pa. St. 43; *Smith's Estate*, 140 Pa. St. 344; *Eisner's Appeal*, 175 Pa. St. 143.

This rule differs from the later English rule in that it (1) treats cash and stock dividends alike and (2) apportions dividends according to the time when they were earned.

In this second point of difference it has the support of New Jersey (*Van Doren v. Olden*, 19 N. J. Eq. 176; *Ashhurst v. Field's Admr.*, 26 N. J. Eq. 1) and Maryland (*Thomas v. Gregg*, 78 Md. 545, 28 Atl. 565) and to some extent, so far as cash dividends or distributions are concerned, of New Hampshire

(*Lord v. Brooks*, 52 N. H. 72) and South Carolina (*Cobb v. Fant*, 36 S. C. 1, 14 S. E. 959) and of some text writers, but it is opposed in Kentucky (*Hite v. Hite*, 93 Ky. 257, 19 L. R. A. 173) as well as by all the cases cited in support of the English rules, including those of Maine and Georgia. The three courts which follow the rule of apportionment have found great difficulty in applying it and a different method of ascertaining how the apportionment should be made has been adopted by each. This rule is open to grave objections, both theoretical and practical, but we need not express an opinion as to whether they are more weighty than the objections made to the rule of non-apportionment, for in the present case it appears that the profits out of which the dividend was declared were earned during the life tenancy, and therefore whether the rule of apportionment or that of non-apportionment should be followed the dividend so far as it represented earnings would all go to the life tenants.

Fourthly, what has been called the rule of the Middle States. This rule follows the first point of distinction between the Pennsylvania rule and the present English rule in that it treats cash and stock dividends alike but does not necessarily recognize the second point of distinction, namely, that in regard to apportionment. This rule has the support not only of Pennsylvania, New Jersey and Maryland, which as shown above also follow the rule of apportionment, but also of Kentucky (*Hite v. Hite, supra*) which does not follow the rule of apportionment, and Tennessee (*Prichett v. Nashville Trust Co.*, 96 Tenn. 472, 33 L. R. A. 856) and New York (*McLouth v. Hunt*, 154 N. Y. 179) which are not yet fully committed as to the matter of apportionment, (though New York is usually cited against the rule of apportionment) and of nearly all the text writers (see 2 Thom. Corp. §2192 *et seq.*; 1 Mor. Corp. §468; Cook, Stock and Stockholders, §554; 2 Perry Trusts, §545, Note; 9 Am. & Eng. Enc. Law 715; 33 Alb. L. J. 427; 19 Am. L. Rev. 737).

Thus we find in support of the rule by which cash dividends go to the life tenant and stock dividends to the remainderman, the

English House of Lords, the Supreme Court of the United States, and the courts of Massachusetts, Connecticut, Rhode Island and the District of Columbia, and in support of the rule by which cash and stock dividends are treated alike, the courts of New York, New Jersey, Pennsylvania, Maryland, Kentucky and Tennessee and nearly all text writers, and probably the courts of New Hampshire and South Carolina would hold the same way (see cases *supra.*) Thus, while the latter rule is claimed by most writers to have the weight of authority on its side, this is by no means apparent. The authorities are at most pretty evenly matched and so nearly so that we feel we must decide principally upon the reasons as they appeal to us. It may be remarked however that the decision of the Supreme Court of the United States was written by Mr. Justice Gray who had previously held the same way as a member of the Supreme Judicial Court of Massachusetts, and that the cases *contra* in Kentucky, Tennessee, Maryland and the latest case in New York were all decided after and notwithstanding the decision by the Supreme Court of the United States and the text writers still adhere to the latter rule notwithstanding the weight of that high authority.

In considering the relative merits of these rules, it must be borne in mind that they have nothing to do with stock issued merely as "water" or stock issued to represent a natural increase in the value of the company's property or business irrespective of earnings. The question concerns stock issued to represent earnings and only in so far as it does represent earnings. Whether the stock does represent earnings or not is another question. Many courts hold the presumption to be that it does represent earnings. But assuming the presumption to be the other way and that the stock should be treated as capital unless it can be shown with reasonable certainty that it was issued to represent earnings, still in the present case that fact does clearly appear from the action of the corporation. For the corporation set off $400,000 of its earnings as representing the exact par value of the stock issued.

The courts on both sides agree that the earnings of a corporation are not income to the stockholder until a dividend is de-

clared, however great an accumulation of earnings there may be; that a corporation may retain its earnings to a reasonable extent, which is generally held to be a very great extent, for use as capital, called temporary, floating, actual or *de facto* capital, instead of paying them out in dividends; that it may pay out such accumulated earnings from time to time as extra dividends in cash or other property, or may permanently capitalize them by issuing new stock therefor in the shape of stock dividends; that in any such transaction the substance rather than the form is to be regarded; and that as between the life tenant and remainderman the intention of the creator of the trust is to prevail as against the intention of the corporation. They differ as to the application of these last two propositions, namely, as to what is form and what substance, and as to what is the intention of the creator of the trust.

Take, first, the question of form or substance. On both sides it is held that the words used, as, for instance, "dividend" or "capital," in declaring a distribution is mere matter of form and that the substance is to be determined by what is done rather than by what is said. Then the courts which make a distinction between cash and stock dividends assume that if the intention is solely to issue stock, even though representing earnings, and not to give the stockholders the privilege of receiving cash instead of stock if they so desire, the transaction does not amount in substance to the payment of a cash dividend and a purchase of the stock by means of the dividend, but that it amounts merely to a change in the form of the evidence of title to what was already owned by the shareholders, because, as they argue, the earnings until declared as a dividend belong to the corporation as part of its property and are, like the capital, represented by all the shares and hence if the number of shares is increased *pro rata*, the same property is still owned by the same persons and in the same proportions and nothing is paid out; in fact, that the earnings are already *de facto* or floating capital and that the issue of new stock to represent it is merely a confirmation of what has already occurred substantially. These courts look to the source of the dividend for the benefit of the remainderman but not for the benefit

of the life tenant; they hold that if there is merely a distribution of stock, even though representing earnings, it goes to the remainderman, but if there is a distribution of capital, even though in cash and under the name of a dividend, it does not go to the life tenant.

On the other side it is urged, soundly, as we believe, that the courts have not got through the form when they have merely ascertained whether the corporation contemplated paying anything out as an alternative to giving the stock at the option of the shareholders, but that they should go further and look to the source or nature of the property which the stock is to represent and for the benefit of the life tenant as well as the remainderman, and that if it is to represent what is already capital it is capital and if it is to represent earnings it is income or dividend; that while accumulated earnings are not dividends until so declared and are in a sense capital because they are used as such, still they are not technically either capital or dividends but are profits and equitably belong to those entitled to the dividends though the time of payment must be left to the management of the corporation; and that, "while the payment of a stock dividend is not an actual distribution of profits, it does materially affect the rights of the shareholders in respect of the accumulated profits. The effect of a stock dividend is to capitalize the accumulated profits permanently. The profits on account of which a stock dividend is declared can never afterwards be distributed among the shareholders as dividends, and, after the new shares have been issued, the right of the corporation to pay further dividends, and the right of the shareholders to demand them, must be considered with reference to the increased nominal capital. The payment of a stock dividend is not merely an increase of the nominal amount of the shares, leaving the rights of the shareholders unchanged. In suos n_e and effect it amounts to a distribution of profits among the shareholders in cash, and a subsequent purchase of new shares in the company with the sums distributed." 1 Mor. Corp. §468. The action of the corporation is not merely a confirmation of what has already occurred, for so long as accumulated profits remain such, they may be paid out as dividends, but

after they have been converted permanently into capital they cannot be so paid out. It is merely a matter of form whether the corporation keeps the cash and issues the stock directly to the shareholders or pays the cash and then receives it back in payment for the stock. While the action of the corporation in deciding whether the earnings shall be retained as capital or paid out as dividends is binding, and while earnings when so converted into capital are to be regarded as capital to the corporation and thereafter as capital to the holder of the stock representing it, still it does not follow that the corporation in so acting does not in effect declare a dividend. If the corporation should pay cash to those who wished it and then receive the cash back for the stock, the payment, it is conceded, would be a dividend, and yet thereafter the cash would be capital to the corporation and the stock would represent capital to its owner just as in the case of a direct issue of stock representing earnings. In other words, what the earnings are after the transaction does not prevent the transaction itself from amounting in substance to the payment of a dividend.

Secondly, as to the intention of the creator of the trust. It is agreed on both sides that the testator or grantor cannot interfere with the internal management of the corporation as to when or in what form dividends shall be paid, but that he may direct to whom they shall go when once they have been paid. The courts which follow the present English rule then argue that in a case like the present in which no special directions are given the creator of the trust must have intended that what should be income and what capital should be determined by corporation law and that since the corporation may convert earnings into capital by issuing a stock dividend or pay them out as cash or other dividends, the method pursued in any particular case must determine whether the dividend is to be capital or income. On the other hand it is argued, and with good reason, as we believe, that while it is a matter of corporation law as to when and how dividends shall be paid, yet it is a matter of trust law as to whom they shall go in a case of this kind when they have been paid and that the corporation ought not to be permitted by the mere form of its

action to determine the ownership of property as between third parties, that while the action of the corporation decides whether earnings shall be capital or income so far as the corporation is concerned, it cannot determine that question as between the life tenant and remainderman; that that is for the courts to determine under trust law; that equity which has to do with trusts disregards form and grasps at the substance; that the general intention of the creator of the trust, which is to be given effect in the absence of any special directions, is that the life tenant shall have the income regardless of the form in which it is received; and that as a matter of fact stock dividends in so far as they are issued to represent earnings are generally regarded as dividends upon or income of the stock rather than as a mere change in the form of the evidence of ownership. People ordinarily would not distinguish between a case in which cash is paid and then received back in payment for stock at par and one in which the stock is issued directly to avoid useless labor. The earnings and distribution of profits is the very object for which business corporations exist, and in a case of this kind the general intention of the testator is that those profits when earned and distributed shall go to the life tenant and while he cannot under the law say how or when they shall be distributed any more than in the nature of things he can say how, when or whether they shall be earned, yet he may say and in the absence of a manifest contrary intention must be presumed to intend that when earned and distributed they shall go as income, irrespective of the particular form which the corporation may happen to choose for that distribution. And in so far as earnings are distributed, it is immaterial to the corpus of the trust whether they are paid in cash or stock. If they are paid in cash they reduce the value of the stock so much. If they are paid in stock of the same value they reduce the value of the old stock an equal amount.

For these reasons we adopt the rule that treats cash and stock dividends alike and regards them both as income, in so far as they represent earnings. In this argument we have considered stock dividends only in so far as they represent earnings and aside

from the matter of premiums, which we shall now proceed to consider.

While we have not adopted and are not required by the facts of this case to pass upon the Pennsylvania rule of apportionment of dividends, whether cash or stock, with reference to the time when the profits out of which they are paid were earned, we are required to pass upon the question whether a so-called dividend, whether cash or stock, shall be apportioned with reference to its source as between capital and earnings. We have seen that even a cash dividend, if paid out of capital, would be held for the remainderman and if it should be paid partly out of earnings and partly out of capital it would be apportioned accordingly between the life tenant and remainderman. It is precisely the same with a stock dividend. It must be apportioned according as it represents capital or earnings. The life tenant is entitled to the earnings only and therefore to stock only in so far as it represents earnings. If the value of a company's property or business should increase from natural causes and apart from accumulated earnings, such increase would be an incident of the corpus and would be for the benefit of the remainderman and if stock should be issued to represent that increase it would be held for the remainderman, though the life tenant would meanwhile receive the income thereof, just as real estate held in trust is all held for the remainderman however much it may increase in value, the life tenant meanwhile receiving the increased rents. And even if the new stock were issued to represent an increase of value due to accumulated earnings but not earnings appropriated to pay for the new stock, it would still belong to the corpus of the trust, for the life tenant is not entitled to the earnings until declared as a dividend and such earnings could at any time afterwards be paid out as dividends. The premium upon stock, which represents the increased value of the property or business of the company, is an incident of the corpus and not income from it. If new stock is issued at par, and not as a dividend, the right to take the stock at par represents the premium and is in no sense income or representative of income. It belongs to the holder of the stock, the trustee, for the benefit of all interested in the stock. He may

sell the right to take the stock at par and the proceeds will be held for the remainderman, the income thereof to go to the life tenant. If instead of a direct stock dividend the company should pay a cash dividend with the privilege on the part of the stockholder of turning around and taking new stock at par, it is evident that the life tenant would be entitled to the amount of the cash dividend only and that if the trustee exercised or sold the right to take the new stock at par all the value that he received above the par value or all that he received on the sale would be held for the remainderman. The only theory upon which a life tenant is entitled to a stock dividend at all is that it amounts substantially to the payment of a cash dividend out of earnings and its payment back to the company for new stock. Consequently the life tenant is not entitled to more than the amount which he would have received in case the dividend had been paid in cash. And on the other hand the right to take new stock at par is an incident of the corpus of the trust belonging to the holder of that corpus and the corporation could not as matter of law under ordinary circumstances give it to any one else. Therefore if a distribution of earnings is made in the form of new stock and the stock is above par, it necessarily follows that the life tenant is entitled only to so much of the stock as equals in value the earnings appropriated and that the rest of it must be held by the trustee as part of the corpus of the trust. This follows necessarily from the reasoning of all the courts, whether they follow the present English or the Pennsylvania rule or the rule of the Middle States. For instance in England, in *Re Malam*, (1894) 3 Ch. 578, the corporation issued new stock and gave the shareholders the privilege of taking the stock or an amount equal to its par value in cash. The stock was at a premium. The court held that the life tenant was entitled only to so much of the new shares as represented the dividend applied in taking them up, and that the rest of such value formed part of the corpus of the trust. To the same effect is *Davis v. Jackson*, 152 Mass. 58, *Brinley v. Grou*, 50 Conn. 73. See also *Thomas v. Gregg*, (Md.) *supra*; *Hite v. Hite*, (Ky.) *supra*; *Eisner's Appeal*, (Pa.) *supra*; *Simpson v. Moore*, 30 Barb, 637; *Walker*

*v. Walker,* (N. H.) 39 Atl. 432; Cook, Stock and Stockholders, §559; 1 Elliott, Railroads, §307; 9 Am. & Eng. Enc. 718. Morawetz says (1 Corp. §468):

"It should be observed, however, that the distribution of a stock dividend permanently capitalizes only so much of the accumulated surplus as is applied in paying up the new shares. Any additional amount would be retained by the corporation as surplus, after the increase of its nominal capital, and might still be used to pay dividends. Hence, a tenant of shares for life is never entitled to receive more than the par amount of a stock dividend, although the new shares are worth more than par, and the entire surplus of the company was earned during the existence of the life estate. He is entitled to receive only so much of the surplus earned during the life estate as is used in paying up the new shares."

In the present case $400,000 of earnings were appropriated as payment for the par value of 4,000 shares of new stock of the par value of $100 each. The value of the old stock in consequence of the issue of the new stock at once dropped from between $500 and $550 a share to between $335 and $350 a share. The new shares were immediately worth the latter amount. This value represented the amount of the dividend paid plus the depreciation in the value of the old shares. It represented the amount of earnings paid in effect as dividends to which the life tenants were entitled and the right to take new stock at par which was an incident of the corpus and in no way income from the stock or due to the earnings appropriated as a dividend. If the dividend had been paid in cash, the trustees would have been obliged to pay it and it only to the life tenants. They would then have had remaining the right to take the new stock at par which they might exercise or sell as representing the corpus. The 583 shares now held by the trustees as the portion of the new stock allotted in respect of the 875 shares of old stock held by them represents $58,300 of earnings and over twice that amount as the value of the right to take the new stock at par or as the depreciation in the value of the old stock. So much of the new stock as was of the value of $58,300 immediately after its issue should

be apportioned to the life tenants, the remainder should be held by the trustees as part of the corpus of the trust.

The decree of the Circuit Judge awarding the whole of the new stock held by the trustees to the life tenants is reversed and the case is remitted to him with directions to make an apportionment and decree in accordance with the foregoing views.

*Robertson & Wilder* for plaintiffs.

*Thurston & Carter*, and *L. Andrews* for defendants.