## DISPOSITION OF STOCK DIVIDENDS AS BETWEEN LIFE TENANT AND REMAINDERMEN.

Common Pleas Court of Hamilton County.

WILLIAM WORTHINGTON, TRUSTEE UNDER THE WILL OF JOSEPH C. WOODRUFF, DECEASED, v. HARRIETT W. McALPIN ET AL.

Decided, December 9, 1915.

*Trusts—Purpose of a Corporation Paying a Stock Dividend—Determines Whether it shall be Treated as Income or an Addition to the Principal Where the Creator of the Trust Receiving such Dividend is Silent as to Whether it shall Go to the Life Tenant or the Remaindermen.*

1. In Ohio there is no hard and fast rule to determine what disposition should be made of stock dividends; that is to say, whether they are payable as income to the life tenant or become part of the corpus of the trust fund and belong to the remaindermen. (*Wilberding, Admr.,* v. *Miller,* 90 O. S., 54, followed.)

2. Where the creator of the trust is silent as to what disposition is to be made of stock dividends, the intention of the company when declaring same in absence of other evidence is the true guide; and where the directors of a company in declaring an extra dividend out of current earnings, payable in stock, expressly state that it is a dividend, it will be so considered by the court and ordered paid to the life tenant.

3. Where the Procter & Gamble Company declared an extra dividend, expressly stating that it was a dividend payable in capital stock of the company, such dividend being declared out of the earnings of the current year, and as the declaration did not have the effect of impairing the integrity of the capital stock of the company, but, on

the contrary, increased its market value, such dividend will be treated as income and directed to be paid to the life tenant.

*William Worthington,* for plaintiff.

*John L. Stettinius, amicus curiae.*

MAY, J.

William Worthington, as trustee under the will of Joseph C. Woodruff, deceased, filed his petition and supplemental petition, and they are in parts—

That the court would instruct and advise him as to the administration of the trust created by the will of Joseph C. Woodruff, and direct what shall be done with reference to certain shares of the capital stock of the Procter & Gamble Company received by him as trustee as stock dividends paid by said company.

Item IV of the will provides that the rest, residue and remainder of the testator's estate, both real and personal, of whatever nature and wherever situate, be given to the executors hereinafter named, to have and to hold the same in trust, nevertheless, for the following uses and purposes, to pay in certain proportions a net income on the trust estate to certain persons designated during their respective lives.

The petition further recites, that, on and since the first day of April, 1912, the plaintiff, as trustee under the will of Joseph C. Woodruff, has been the owner of one hundred and thirty-three (133) shares of the common capital stock of the Procter & Gamble Company, a corporation organized under the laws of Ohio; that on the first day of April, 1912, the Procter & Gamble Company had a capital stock of fourteen million two hundred and fifty thousand ($14,250,000) dollars, of which two million two hundred and fifty thousand ($2,250,000) was represented by preferred stock, divided into shares of the par value of one hundred ($100) dollars each, and twelve million ($12,000,000) dollars was common stock, divided into shares likewise of the par value of one hundred ($100) dollars each; that on the twelfth day of November, 1912, the board of directors of the Procter & Gamble Company adopted resolutions favoring an increase of the common stock of said company in terms as follows:

"Resolved, by the Board of Directors of the Procter & Gamble Company that, subject to the action of the stockholders, the capital stock of this company be increased from its present amount of $14,250,000 to $26,250,000 in par value, said increase to consist of common stock only in the par value of $12,000,000, divided into 120,000 shares of the par value of $100 each, and that said new stock be disposed of at such times, in such amounts and upon such terms and conditions as the board of directors of this company shall from time to time determine."

That in advising the stockholders of the company of the passage of the resolution the company has sent a letter to the stockholders, in which letter it is stated, under the signature of William Cooper Procter, president of the company, that—

"The growth of the business of this company and the favorable prospects for a continuation of this growth in the future are such that your directors feel that there should be an increased distribution of earnings to the holders of the common stock, and the following plan has been approved by the board for carrying it into effect:

"Commencing February 15, 1913, the quarterly rate of dividend on the common stock of the company will be fixed at four (4%) per cent., instead of three (3%) per cent. as heretofore.

"In addition, subject to ratification by the stockholders of the proposed increase in the common capital stock of the company in accordance with the accompanying notice and resolution of the board of directors, the directors expect to declare each year, commencing in 1913, out of current earnings, an extra dividend of four (4%) per cent. upon the common stock. This extra dividend will be payable in common stock in the proportion of one share to twenty-five, to be issued as soon as practicable after the close of each fiscal year, on June 30.

"While it is the hope of your directors that conditions will continue so that no change in any part of this plan may be necessary, it must be understood that its continuance will depend upon the action of the board of directors in each specific instance.

"By order of the board of directors.
"William Cooper Procter, *President.*"

That in pursuance of the notice and the above letter, the company on the seventeenth day of December, 1912, adopted resolutions providing for the increase of the capital stock from

fourteen million two hundred and fifty thousand ($14,250,000) dollars to twenty-six million two hundred and fifty thousand ($26,250,000) dollars, said increase to be divided into one hundred and twenty thousand (120,000) shares of the par value of one hundred ($100) dollars each of common stock only; that on February 15, 1913, the directors of the company in sending out the quarterly dividend of four (4%) per cent. of the common stock accompanied the same with a letter in which they state:

"In reply to numerous inquiries, we take this opportunity of explaining in detail the terms of the resolution adopted by the board of directors on November 12, 1912. By this resolution the cash dividend rate on the common stock has been increased from twelve per cent. to sixteen per cent. In addition to this, an extra dividend of four per cent. will be declared as soon as practicable after June 30, next, which is the close of the present fiscal year. This dividend will be distributed in new common stock of the company to holders of the common stock in proportion of one share to twenty-five on such date as shall be determined by the board of directors. *This common stock, being a dividend,* will be issued to the stockholders without any cash payment by them.   *   *   *

"This new stock when issued and the scrip when converted into full shares as above, will be entitled to receive the same dividends as the old stock, to-wit, the cash dividend and such extra dividends payable in stock as shall be declared in subsequent years, all in accordance with said resolution of November 12, 1912."

The petition further recites that on the seventeenth day of June, 1913, an extra dividend of four per cent. upon the issued and outstanding common capital stock of the company, payable from the earnings of the past fiscal year, in common stock on or after the fifteenth day of August, 1913, was decleared by the board of directors; and on the fifteenth day of August, 1913, this extra dividend of four per cent. was paid by issuing to each holder of common stock certificates of stock for full shares and non-dividend bearing scrip certificates for fractional parts of one share. And at the same time the board of directors sent each stockholder a circular letter with reference to the business of the company and the net earnings for the fiscal year of said company, which ended on June 30, 1913.

In this circular, under date of August 15, 1913, the company says:

"The net earnings for the year after all reserves and charges for depreciation, losses, advertising and special introductory work have been deducted, amounted to $3,813,111.08.

"The business is growing and the outlook, so far as this company is concerned, is satisfactory."

In the supplemental petition it is stated that during the years 1914-1915 the company continued the policy inaugurated in 1913, and declared each year an extra dividend of four per cent., payable in the capital stock of the company. The circular letter which was sent to all the stockholders contained the same statements as set out in the letter of August 15, 1913, the difference being in the increase, showing a large increase of business.

The question for the court to determine in this case is, whether the extra dividend payable in the capital stock of the company in whole or in part is net income belonging to the beneficiaries under the will, or shall be treated as part of the corpus of the trust estate belonging to the remaindermen, the beneficiaries under the trust being entitled merely to the income upon said stock dividend.

It is agreed by all text-writers, as well as by all courts who have examined this question, viz., whether the life tenant or the remainderman is entitled to a stock dividend, is a perplexing one.

Judge Grant of the Cuyahoga Circuit Court of Appeals recently stated a very salutary principle which should guide all Ohio nisi prius judges, viz., that one case decided by the Ohio Supreme Court is worth one hundred cases decided elsewhere by courts of last resort.

The only case decided by the Supreme Court of Ohio on this perplexing question is the recent case of *Wilberding, Administrator, v. Miller,* 90 O. S., p. 28. The learned and exhaustive opinion in this case was written by Judge Johnson and concurred in by Chief Justice Nichols and Judges Donahue, Newman and Wilkins; Judge Wanamaker dissented, but no dissenting opinion has been printed. At page 47 the court says:

"Whether the life tenant or the remainderman shall be entitled to a stock dividend declared out of earnings accumulated

during any term of years and used by a company in the improvement of its property and business, is a question that has not been determined by this court, nor has the rule that shall be followed as between a life tenant and remaindermen in the distribution of the proceeds of the assets of a corporation on its final distribution.

"The question has been frequently before the courts of England and some of the states of this country. Three principal rules have been considered."

Judge Johnson then makes an exhaustive examination of the present English, Pennsylvania, and Massachusetts rules, citing at length the leading cases in those jurisdictions on this question. The learned judge also examines cases from other states, notably Delaware, New York and Connecticut, and on page 54 lays down what I consider the *ratio decidendi* of the case.

"In spite of the irreconcilable differences in the conclusions arrived at, there are a few general propositions as to which there is substantial agreement. Among them that there should be no arbitrary, rigid rule which would prevent the court from looking into the facts and circumstances of each case to determine the rights of the parties according to justice and equity; that the earnings of a corporation are and remain its property until it distributes them among its stockholders; that when acting in good faith and for the best interests of all concerned, the corporation may reserve the earnings of a prosperous year to make up for a possible lack of profits in future years, or it may retain portions of its earnings and invest them from time to time in the improvement and extension of its plant, and in general betterments, and thus increase the value of its permanent property and assets; that the intention of the testator to be derived from the language employed in the creation of the trust; and from the relation of the parties to each other, and the circumstances of the case, must control.

"It is also a reasonable view that when no special direction is given in the will creating the trust as to what shall be considered principal and what income, the testator will be presumed to have had in mind the legal authority of the corporation to treat its assets as above stated, and to have contemplated that the income would only come from the order of the company itself, acting in good faith."

This extract from the decision in *Wilberding* v. *Miller*, convinces me that our Supreme Court did not mean to lay down any

"arbitrary, rigid rule" which would prevent the court looking into the facts and circumstances of each case to determine the rights of the parties according to justice and equity.

It would be mere erudition to cite the innumerable cases on this question. They have all been collected by Mr. Stettinius in the admirable and exhaustive brief that he filed as *amicus curiae*.

As said by our Supreme Court in the Wilberding case, there are three general rules: (1) the present English rule under which dividends of cash are held to belong to the life tenant and stock dividends to the remaindermen; (2) the Pennsylvania rule that ordinary dividends on stock held in trust are to belong to the person entitled to the income of the trust fund, but that extraordinary dividends should be apportioned between the life estate and the remaindermen in accordance with the amount thereof accumulated before and after the creation of the trust; dividends of earnings made after death of testator are income no matter whether it be in cash, scrip or stock; and (3) the Massachusetts doctrine, "a simple rule is to regard cash dividends, however large, as income. and stock dividends, however made, as capital."

And in New York a recent ruling of the court of appeals, *In Re Osborne*, 209 N. Y., 450, cited at page 52 in the Wilberding decision, the rule is laid down that in the case of stock dividends there should be an apportionment in such a way as to preserve the integrity of the trust fund, and that surplus earnings before the creation of the trust or purchase of the stock are to be treated as part of the capital of the trust fund.

Therefore, as I am not bound by any hard and fast rule, but am directed under the opinion in the Wilberding case to examine the facts and circumstances of each case, I am of the opinion that justice and equity in this case require me to follow the rule that extra dividends declared out of the earnings of the corporation after the creation of the trust, but payable in stock dividends, belong to the life tenants and not to the remaindermen, provided that the integrity of the trust fund is not thereby impaired. This is the rule that is now followed by the majority of the courts of last resort, and is opposed to the English and Massachusetts doctrine, and that held by the federal courts.

What, then, are the facts in the case at bar? There is no doubt whatsoever that the extra four per cent. dividend payable in the capital stock of the Procter & Gamble Company was payable out of the current earnings of the company, made after the creation of the trust. The trust herein was created in 1904, and in April, 1912, the year before the intention to declare such a dividend, the trustee had one hundred and thirty-three shares of the common stock of the Procter & Gamble Company. And in accordance with the circulars quoted above the intention of the corporation was to declare this extra stock dividend from current earnings. Furthermore, the company itself treated this extra dividend, payable in stock, as a dividend. In its circular of November 12, 1912, this sentence appears: " * * * the directors expect to declare each year, commencing in 1913, out of current earnings, an extra dividend of four per cent. upon the common stock. This extra dividend will be payable in common stock."

It therefore appearing that the stock dividends declared in 1913, 1914 and 1915 were declared out of current earnings, and were treated by the corporation as dividends, what effect did the declaration of these dividends have upon the integrity of the trust fund?

In this connection it was suggested on the argument that the court should follow the rule laid down in Hawaii, *Carter* v. *Crehore*, 12 Hawaii Reports, 309, viz., that if a distribution of earnings is made in the form of new stock, and the stock is above par, it necessarily follows that the life tenant is entitled only to so much of the stock as equals in value the earnings appropriated, and the rest of it must be held as part of the corpus of the trust.

This, in my opinion, is another form of stating the New York rule as laid down in the Osborne case, *ube supra*, viz., that there must be an apportionment of the fund if the integrity of the trust fund is impaired; and this question requires a consideration of all the facts in the case. In the Hawaii case the capital stock of the company was selling at between five hundred and and five hundred and fifty dollars before the declaration of the increased dividends, and between three hundred and three hundred and fifty dollars after the declaration of dividends, whereas

the Procter & Gamble stock was selling at about five hundred and fifty dollars before the declaration of the dividend, and at this writing is nearly six hundred and fifty dollars. For these reasons I do not think I should follow the Hawaii rule.

I believe that the best discussion of the cases following the rule that I think should be the guide under the facts and circumstances of this case is to be found in *Bryan* v. *Akin,* 86 Atlantic, 674, and in the *Carter* v. *Crehore,* 12 Hawaii, 309; *Holbrook, Trustee,* v. *Holbrook,* 74 New Hampshire, 201. And whoever is interested in this question will find it profitable, not only to read these decisions especially referred to, but the splendid annotations found in 12 L. R. A. (N. S.), 768; 35 L. R. A. (N. S.), 363; 50 L. R. A. (N. S.), 510.

The English and Massachusetts rule and the rule of the United States Supreme Court are hard and fast rules, and should not be applied, as our Supreme Court says, unless the intention of the testator, as expressed in his will, makes it necessary to do so. An examination of the Woodruff will shows that the testator had no express intention on this question, and as Judge Johnson says at page 55 in the Wilberding case:

"It is also a reasonable view that when no special direction is given in the will creating the trust as to what shall be considered principal and what income, the testator will be presumed to have had in mind the legal authority of the corporation to treat its assets as above stated, and to have contemplated that the income would only come from the order of the company itself, acting under good faith."

As has already been shown, the Procter & Gamble Company treated these stock dividends as a payment of extra dividends out of the earnings, payable in the stock in lieu of cash, and in my opinion have instituted this policy so that the cash dividends of this prosperous business should not be too large.

There is another reason why I do not think the same conclusion should be reached as to the disposition to be made of the stock dividends in this case as was made in the Wilberding case. The distributive share of the assets of the corporation were received, in that case, by the trustees on liquidation and dissolution of the company, and naturally they were part of the capital

and belonged to the trust fund, and not to the beneficiary. In the case at bar there is no distribution of the assets of the corporation except earnings.

Then again, on page 59 of the Wilberding opinion it appears that the company in 1905 passed three hundred thousand dollars to the contingent fund, and a little over sixty thousand to the profit and loss account.

The court says:

"There is no reason to show on the statement for this. It was in line with the policy of the company, and as the company had therefore determined to soon cease operations, and did so in a year or so thereafter, these sums should, so far as the portions thereof received by the trustees are concerned, be treated as income."

This likewise confirms me in my view that the Massachusetts rule was not followed by the court.

It was stated at the argument that the United States Commissioner of Revenue, with the approval of the Secretary of the Treasury, had issued a treasury regulation this year in which the former rulings regarding stock dividends as income had been changed, so that hereafter the government would treat them as principal. This was merely a tax regulation, and the treasury officials in order to get a uniformity of rulings followed the United States Supreme Court ruling, which follows the Massachusetts and English doctrine.

Viewing the facts in this case from every angle, it is apparent to me that under the will the testator desired the beneficiaries of the trust to receive the net income of the estate, provided that at no time the corpus or trust funds were diminished, and inasmuch as the extra dividends payable in stock have had the effect rather to increase the value of the fund than to decrease it, and inasmuch as they were declared out of current earnings of the company, I am of the opinion that the questions upon which the trustee asked the instruction and advice of the court should be answered as follows:

1. Should said shares of stock or fractional shares of stock heretofore received, and those which may be hereafter received under similar circumstances be held as part of the principal of

said trust, the income therefrom only to be distributed as directed by the will of said Joseph C. Woodruff in part of said annuities and in part to be accumulated?

Answer.    No.

2.    Should said shares of stock or fractional shares of stock heretofore received or hereafter received under the same circumstances be regarded as income of the trust and sold, and the net proceeds distributed as income of the year in which they were received as directed by the will of Joseph C. Woodruff?

Answer.    Yes.

3.    Should part of the value of the shares of stock and fractional shares of stock heretofore received, and others which may hereafter be received under the same circumstances, be considered as income and the residue as principal; and, if so, in what proportion should said division be made, and how shall the plaintiff determine the part thereof which is to be credited to income account and the part thereof which is to be credited to the principal account?

Answer.    The answer to the second question makes it unnecessary to answer this question.    This question asks for an application of the doctrine of the Hawaii case; but for the reasons given above, viz., that the effect of declaring the stock dividends in the Procter & Gamble Company has been to increase the value of the stock rather than diminish it, it is unnecessary to apply this rule.

In answer to the question raised in the supplemental petition, that in the event the court should find the stock dividends income, what disposition the plaintiff should make of the same under Item VIII of the will, I am of the opinion that the stock dividend of August, 1913, declared prior to the death of Edward Woodruff, which occurred on the 22d day of June, 1914, is payable to his executors.

The stock dividend payable August 15, 1914, to stockholders of record on July 25, 1914, by the provisions of the second clause of Item Four of the Joseph Woodruff will, becomes part of the principal of the trust estate.

In conclusion, it may be interesting to note that the rule followed by the court for the disposition of the question presented

in plaintiff's petition is followed in Pennsylvania, Iowa, Kentucky, Maryland, New Jersey, New York, South Carolina, Tennessee, Wisconsin, Minnesota and Hawaii. (See Cook on Corporations, 6th Ed., Sec. 554, *et seq.*). A recent Vermont case is to the same effect. *In re Heaton's Estate*, 96 Atlantic, 21.

The court is greatly indebted to Mr. Stettinius as *amicus curiae*, for the exhaustive and comprehensive brief he filed in the case, thus lightening the labor of the court.

A decree in accordance with opinion may be taken.