. DAYTON T. MOORE et als.,

Trustees of the Estate of MOSES W. WEBBER, In Equity,

*vs.*

STELLA R. MCKENZIE and THE WEBBER HOSPITAL ASSOCIATION.

York.    Opinion November 23, 1914.

*Bill in Equity.    Construction of Will.    Life Tenant.    Trustees.    Will.*

A bill in equity for the construction of the will of Moses W. Webber, deceased. The several answers of respondents admit all the allegations of the bill of complaint.

The residuary clause of the will, under which the first question arises, has already been construed by this Court in *Webber Hospital Asso.* v. *McKenzie*, 104 Maine, 320. In accordance with the construction adopted in that case, it appearing from the bill that the trustees, in their sound judgment, declare the maintenance of the hospital built by defendant association is assured and guaranteed as contemplated by testator and provided in his will, it is answered that the trustees may make the proposed payment of twenty-five thousand dollars to said Webber Hospital Association.

The Court answers in the affirmative the second question "Shall the excess of the estate in the hands of the plaintiffs, trustees, over the sum of ninety thousand dollars be paid to the Webber Hospital Association, the same representing income that should have been paid to said association under the terms of said will."

"Shall the note of Stella R. McKenzie be turned over to said association as representing income" is the third question. It is the opinion of the Court that this note should not be turned over to respondent association, either as principal or income, but be retained by the trustees as principal.

The fourth inquiry is "Shall Stella R. McKenzie be paid one hundred dollars annually as a gross and fixed sum; or such sum, not in excess of one hundred dollars, annually as the trustees may deem necessary for the maintenance of the house at Old Orchard, Maine." The item of the will, under which this question arises is:—"I also give from the income of my property one hundred dollars for the maintenance of said house at Old Orchard, Maine, while in the use of said Stella F. Ripley." The house mentioned is that already devised by the will to

said Ripley (now McKenzie) for use during her life. It is the conclusion of the Court that the sum of one hundred dollars be paid annually by the trustees to said McKenzie.

The last question is "5th. Can the trust fund of fifteen thousand dollars for the benefit of Stella R. McKenzie and the trust fund for the benefit of the Webber Hospital Association be invested together and the net income paid to each *pro rata*, or shall there be two distinct funds set apart."

There is no authority of law for the mingling of trust funds proposed by this inquiry. Certainly it could not be considered if the two trusts were to be administered by distinct trustees. That the trustees were or are the same, or that the corpus of each fund is finally to be paid to or held for the same person can make no difference. Each trust must stand alone; otherwise losses legitimately to be borne, with corresponding loss of income, by one, could be imposed in part upon the other.

On report. Decree according to the opinion.

This is a bill in equity, in which the construction of the will of Moses W. Webber is sought. All the allegations of the bill are admitted in the several answers thereto. The following is a copy of the will of Moses W. Webber, omitting the formal parts:

"I, Moses W. Webber of Biddeford, Maine, manufacturer, make this my last will.

I give, devise and bequeath my estate and property, real and personal, as follows—that is to say:

$500. Five hundred dollars as a fund the income from which to be used for the perpetual care of my burial lot in Laurel Hill Cemetery, Saco, Maine.

$750. Seven hundred and fifty dollars for a monument with inscriptions thereon of all buried in the lot of my father's, Aaron Webber, in Biddeford Cemetery, Biddeford, Maine, there shall also be markers for each one buried there.

$250. Two hundred and fifty dollars as a fund the income from which to be used for the perpetual care of said burial lot of my father in Biddeford Cemetery, Biddeford, Maine.

$250. Two hundred and fifty dollars as a fund the income from which to be used for the perpetual care of the burial lot of my wife's father, William Littlefield, in Laurel Hill Cemetery, Saco, Maine.

$5,000. Five thousand dollars to Stella F. Ripley, my wife's cousin, who has faithfully made a home for me since the death of my beloved wife.

$15,000. Fifteen thousand dollars as a fund the income from which to be given said Stella F. Ripley during her lifetime.

$1,000. One thousand dollars as a fund the income from which to be donated to the aid of unfortunate women to enable them to enter the Wardwell home, so called, at Saco, Maine, the fund to be known as the Eliza P. Webber fund.

All of my household goods, books, pictures, &c., &c., wherever situated, to be given said Stella F. Ripley.

I also give Stella F. Ripley, the use of my house at Old Orchard, Maine, during her lifetime.

I also give from the income of my property one hundred dollars per annum for the maintenance of said house at Old Orchard, Maine, while in the use of said Stella F. Ripley.

The balance of my estate and property real and personal and all that shall accrue to said estate, not otherwise mentioned, to constitute a fund which when it shall have amounted to seventy-five thousand dollars the income from which to be used for the maintenance of a Free Hospital in Biddeford, Maine, where the unfortunate may receive good care and skilful treatment.

If a Hospital shall not have been built when the above Hospital fund shall have amounted to seventy-five thousand dollars, twenty-five thousand dollars of the principal may be used for building one providing a sufficient sum is guaranteed for its maintenance.

The above fund to be a memorial to my beloved wife, Eliza P. Webber."

At the hearing in this case, May 29, 1914, it was reported to the Law Court upon the following stipulation; "This cause comes on to be heard on bill and answers; and it appearing to the Justice presiding that questions of law are involved of sufficient importance and doubt to justify the same, by consent of the parties, the cause is reported to the next Law Court for hearing and decision."

The case is stated in the opinion.

*N. B. & T. B. Walker,* for plaintiffs.

*Edwin Stone, and Harris & Dwyer,* for defendants.

SITTING: SAVAGE, C. J., CORNISH, BIRD, HALEY, HANSON, PHILBROOK, JJ.

BIRD, J. This is a bill in equity brought for the construction of the will of Moses W. Webber, deceased. The several answers of respondents admit all the allegations of the bill.

The first question propounded is "Whether the plaintiffs, trustees, are now authorized to pay to The Webber Hospital Association the sum of twenty-five thousand dollars provided for in said will, for the reason that on December 31st, A. D. 1906 a hospital had not been built as contemplated by said Moses W. Webber in his said will, but has been built since said hospital fund amounted to the sum of seventy-five thousand dollars, by the Webber Hospital Association, aforesaid, in reliance upon and in expectation of receiving said sum of twenty-five thousand dollars, and as the hospital of said association has for four years been maintained as a free hospital and will continue to be so maintained."

In *Webber Hospital Association* v. *McKenzie,* 104 Maine, 320, wherein the residuary clause of the will, under which this question arises, has already been construed and the mode of administering the trust considered, it is said, see Id. pp. 324 and 329-30, "when the time arrives the association may have already built a hospital. If not, the trustees may use twenty-five thousand dollars of the principal for that purpose, if a sufficient sum is guaranteed by other parties, so that with the income from the remaining $50,000 its maintenance is assured. That decision will call for the sound judgment of the trustees."

The complainants, the trustees, allege in their bill of complaint that the future maintenance of said free hospital (that of respondent association) is assured and guaranteed as contemplated by Moses W. Webber and provided in his will and the allegation is admitted in the answers of all the respondents. Assuming the allegation to embody the sound judgment of the trustees, our answer is that the trustees may now make the proposed payment of twenty-five thousand dollars.

The second question is "Shall the excess of the estate in the hands of the plaintiffs, trustees, over the sum of $90,000 be paid to the Webber Hospital Association, the same representing income that should have been paid to said Association under the terms of said will." And the Court answers in the affirmative.

"Shall the note of Stella R. McKenzie be turned over to said Association as representing income" is the third question. Stella R. McKenzie, as executrix, apparently made payments to herself as legatee and as trustee of the fund of $15,000 in excess of the correct amounts (106 Maine, 387) aggregating at the time of her final account

the sum of $10,635.12, for which she gave her note, payable by maker by the application of the income of the $15,000 trust created for her benefit. It is the opinion of the Court that this note should not be "turned over" to respondent association either as principal or income but be retained by the trustees as principal.

The fourth inquiry is "Shall Stella R. McKenzie be paid one hundred dollars annually as a gross and fixed sum; or such sum, not in excess of one hundred dollars annually as the trustees may deem necessary for the maintenance of the house at Old Orchard, Maine."

The item of the will, under which this question arises, is as follows:—"I also give from the income of my property one hundred dollars per annum for the maintenance of said house at Old Orchard, Maine, while in the use of said Stella F. Ripley." The house mentioned is that already devised by the will to said Ripley (now McKenzie) for use during her lifetime.

Maintenance is defined the act of maintaining, or state of being maintained, support, sustenance, defense, livelihood, etc.: that which maintains or supports; means of sustenance; supply of necessaries and conveniences. Webster's New Int. Dict. The act of maintaining, means of support, assistance. The furnishing by one person to another, for his support, of the means of living, or food, shelter, clothing, etc. Black's Law Dict. From these definitions, the apparent expectation of the testator that the life tenant, Stella R. McKenzie, would make the house her home and the duty imposed upon the life tenant by law to keep the premises in repair, we conclude that it was the intention of the testator that the sum of one hundred dollars should be paid annually to the life tenant for the purpose of keeping up the house as a home. The sum of one hundred dollars is therefore to be paid annually by the trustees to said McKenzie.

The last question is "5th. Can the trust fund of fifteen thousand dollars for the benefit of Stella R. McKenzie and the trust fund for the benefit of The Webber Hospital Association be invested together and the net income paid to each pro rata, or shall there be two distinct funds set apart."

We know of no authority of law for the mingling of trust funds proposed by this inquiry. Not for a moment could it be considered if the two trusts were to be administered by distinct trustees. That the trustees were or are the same or that the corpus of each fund finally is to be paid to the same person, can make no difference.

Each trust must stand alone, otherwise losses legitimately to be borne, with corresponding loss of income by one, could be imposed in part upon the other.

*Decree accordingly.*