J. LAWRENCE P. ROBINSON AND T. EDGAR ROB-
INSON, TRUSTEES, *v.* LUCY H. McWAYNE, ET
AL.

No. 2375.

Submitted September 7, 1940.　　　Decided November 18, 1940.

Peters, J., Circuit Judge McLaughlin in Place of
Coke, C. J., Absent, and Circuit Judge Buck in
Place of Kemp, J., Disqualified.

690

692

This is a bill in equity brought by the trustees under the will and of the estate of James Robinson, deceased, praying the instructions of the court of their appointment upon their duties as such trustees of the trust estate created by the will of their decedent for the benefit of Matilda A. Foster and her heirs-at-law in respect to shares of capital stock in domestic corporations received by them

and their predecessors in trust by way of stock dividends, purchase under rights of purchase at par and distribution as property. While the bill is ostensibly directed to the question of apportionment as between equitable life tenants and remaindermen, it, in reality, presents the question of whether the trustees, in the disposition of shares of capital stock of corporations so received by them and now in their possession as a part of the trust estate created by the will of their decedent for the benefit of Matilda A. Foster and her heirs-at-law, are controlled by the principles enunciated by this court in *Carter* v. *Crehore*, 12 Haw. 309 (1900) ; *Evans* v. *Garvie*, 23 Haw. 651 (1917) ; and *Estate of Weber*, 34 Haw. 137 (1937), which directly or by analogy are decisive of all of the questions presented, or should follow the rule adopted by the Supreme Court of the United States in *Gibbons* v. *Mahon*, 136 U. S. 549 (1890), declaring stock dividends to be corpus and distributable to remaindermen. There were other and additional ancillary questions upon which the trustees requested instruction but due to the turn that the case took before the circuit judge they are not now before this court on this appeal.

The testator, James Robinson, by the seventh paragraph of his will, dated July 25, 1872, gave, devised and bequeathed to the executors thereinafter named, in trust, one-eighth of the rest and residue of his property, both real and personal, the income from the same to be paid in quarterly payments to his daughter Matilda Robinson for the term of her natural life and after her death gave, devised and bequeathed the said one-eighth to her heirs. By the same paragraph of his will he made similar devises to his two sons, Mark Robinson and John N. Robinson, and to his five other daughters, *viz.*, Mary E. Foster, Victoria Ward, Bathsheba M. Allen, Watty Robinson and Lucy Robinson. So much of paragraph seven as is

necessary to our consideration is quoted in the margin.[1] Matilda Robinson became Matilda A. Foster. Watty Robinson, also known as Annie Robinson, became Mrs. Annie Jaeger. Lucy Robinson became Lucy H. McWayne. Mark Robinson was also known as Mark P. Robinson.

By the ninth paragraph of his will the testator appointed his sons-in-law, Curtis P. Ward and Samuel C. Allen, and his son Mark P. Robinson as executors of his last will and testament and trustees of all of the property which he had thereinbefore devised, in trust, for the uses and purposes therein set forth.

By the eighth paragraph of his will the testator authorized and directed his executors, with one exception with which we are not concerned, to sell and convey any of the property in his will thereinbefore described that he had devised, in trust, whenever they should deem it best and expedient for the interests of his estate and to invest the proceeds thereof for the uses and purposes of the trusts thereinbefore declared.

The will of the testator was duly admitted to probate on September 7, 1876. Probate proceedings were concluded on June 29, 1909, whereupon the residuary estate was distributed to Mark P. Robinson, the sole surviving trustee named in the will. The residuary estate included both personalty and realty. Mark P. Robinson died April 2, 1915. He was succeeded as temporary trustee by his

---

[1] "SEVENTH: One Eighth of the rest and residue of my property both real and personal I give devise and bequeath to my Executors hereinafter named in trust—the income from the same to be paid in Quarterly payments to my daughter Mary Foster for the term of her natural life, and after her death I give devise and bequeath the said one eighth to her heirs —* * * One Eighth to my Executors hereinafter named in trust, the income from the same to be paid in Quarterly payments to my daughter Matilda Robinson for the term of her natural life, and after her death I give devise and bequeath the said One Eighth to her heirs."

son J. Lawrence P. Robinson on April 15, 1915. On March 6, 1916, J. Lawrence P. Robinson, Robert B. Booth and T. Edgar Robinson were appointed permanent trustees. Mr. Booth resigned May 7, 1920, since which time J. Lawrence P. Robinson and T. Edgar Robinson have been the trustees under the will and of the estate of the decedent.

Included in the residuary estate distributed to Mark P. Robinson were 347 shares of Wailuku Sugar Company, an Hawaiian corporation. Thereafter the trustee or trustees for the time being (hereinafter indiscriminately referred to as "trustees," irrespective as to number), purchased shares of stock in other Hawaiian corporations, including those of Oahu Sugar Company, Pioneer Mill Company and Waialua Agricultural Company, Limited. These corporations from time to time paid stock dividends and the trustees received by way of stock dividends new stock in the corporations declaring the same proportionate to the amount of their respective holdings. A list of the stock dividends in which the trustees participated, including the date, number of shares and amount of cash in lieu of fractional shares received, is set up in the margin.[2] It should be noticed that the dividend paid by the Waialua Agricultural Company on November 30, 1936,

---

[2] Oahu Sugar Company:
    April 1, 1912, 583+ shares $9.32 cash;
    August 1, 1916, 297+ shares $28.60 cash.
Pioneer Mill Company:
    April 15, 1912, 534+ shares $3.16 cash;
    August 15, 1916, 305+ shares $10.50 cash.
Wailuku Sugar Company:
    August 1, 1910, 347 shares.
Waialua Agricultural Company:
    June 15, 1917, 53+ shares $20.71 cash;
    December 20, 1935, 211+ shares $23.13 cash;
    November 30, 1936, 41+ shares Hawaiian Pineapple Company, Limited.

was in shares of the Hawaiian Pineapple Company, Limited, an Hawaiian corporation.

Upon occasions of the increase of the capital stock of some of these corporations the trustees exercised the right to subscribe for and purchase shares of the new stock in proportion to the original stock held by them. The details of such occasions are listed in the margin.[3]

Matilda A. Foster died testate January 4, 1937. She was not survived by descendants, widower or parents. Her heirs are her sister Lucy H. McWayne, the sole survivor of the sons and daughters named in the seventh paragraph of the will of the testator, and the descendants of deceased brothers and sisters, including a deceased half brother and a deceased half sister.

Although no evidence was adduced to that effect, it was assumed for the purposes of the disposition of the case below that the stock in question represented in whole or in part profits of the respective corporations issuing the same which accrued subsequent to the inception of the trust and since the acquisition by the trustees of the stock in respect of which the same were issued. And we shall, for the purposes of this appeal, assume likewise.

None of the stock acquired by the trustees by way of stock dividends, rights of purchase or distribution as property, was apportioned by the trustees beween income and principal of the trust estates created by the seventh paragraph of the will of the testator nor was the stock apportionable under the rule of *Evans* v. *Garvie, supra,* distributed as income to the life tenants accordingly as their respective interests might appear but on the contrary all of the stock so acquired was retained by the trustees

---

[3] March 17, 1905, 162 shares Wailuku Sugar Company; December 15, 1922, 86+ shares Waialua Agricultural Company; May 15, 1925, 45+ shares Waialua Agricultural Company.

and upon the death of each life tenant (with the exception of Matilda A. Foster) the share of the deceased life tenant apportionable to him or her, had the rule in *Evans* v. *Garvie, supra,* been applied, was distributed to his or her heirs-at-law. In the meantime, however, and while stock so acquired by the trustees was in their possession, all cash dividends paid thereon were distributed by the trustees to the life tenants then in being quarterly in equal shares. At the time of the filing of the within suit all stock which had been apportionable to Matilda A. Foster in her lifetime, had the rule of *Evans* v. *Garvie, supra,* been applied, was intact and in the possession of the trustees.

At the time of her death Matilda A. Foster was domiciled without the Territory of Hawaii. On, to wit, February 26, 1937, Frank E. Thompson, Esquire, was, by a judge of the circuit court of the first circuit, at chambers, appointed the ancillary administrator with the will annexed of her estate. On June 21, 1937, Mr. Thompson, as such ancillary administrator, demanded of the trustees the delivery to him of the proportionate share of Matilda A. Foster in all stock dividends received by the trustees as income since the inception of the trust.

The within action was filed by the trustees on September 17, 1937. In addition to the factual background of the trusts created by the will of the decedent, the bill alleges the circumstances of the receipt of the respective stock dividends involved, the acquisition of shares of stock under rights of purchase at par, the distribution of shares of stock as property, the former and present state of the assets of the trust corpus and the number of shares of stock received as stock dividends distributable to the heirs-at-law of Matilda A. Foster, if the rule of apportionment announced in the case of *Evans* v. *Garvie, supra,* were applied. It also alleges that the trustees could not, with

safety to themselves, make apportionment as between the administrator with the will annexed of the estate of Matilda A. Foster, deceased, and the heirs of Matilda A. Foster, some of the latter having claimed that the action of the trustees in "treating all shares and cash in lieu of fractional shares, received by said trust estate by way of stock dividends as principal and retaining the same in the corpus of said trust estate" had been correct; that the principles stated in *Evans* v. *Garvie, supra,* were not applicable with respect to the trust estate and that Matilda A. Foster acquiesced in the retention in the principal of the trust estate of all stock dividends and agreed that the same should be retained in the principal of said trust estate by reason of all of which her personal representatives could not now demand the delivery of any stock dividends at any time paid to said trust estate.

All of the heirs-at-law were made respondents to the bill. Of those who appeared, some reiterated the claims theretofore made by them and some interposed the additional defenses of *res adjudicata*, waiver, estoppel and laches.

The circuit judge, after hearing had, construed the devises and bequests contained in the seventh paragraph of the will of the testator for the benefit of the respective equitable life tenants as referring only to cash income; found that in conformity with such construction Matilda A. Foster mutually agreed with her sisters, Annie Jaeger, Mary E. Foster, Victoria Ward and Lucy H. McWayne, in having stock dividends treated and held as corpus by the trustees and acquiesced in the construction of the will as giving a life interest in cash income and that stock dividends should not be construed as apportionable, the principles enunciated in the case of *Gibbons* v. *Mahon, supra,* and not those adopted by this court in *Carter* v. *Crehore, supra,* and *Evans* v. *Garvie, supra,* controlling.

A decree was entered accordingly. The ancillary administrator of the estate of Matilda A. Foster prosecuted the within appeal.

Where, by the terms of a testamentary trust, property is given to trustees to pay the income thereof to one for life, followed by a devise of the property to the heirs of the income-taker and no special provision is contained in the will as to the disposition of stock dividends that may be received by the trustee during the life of the trust, the question of the disposition of stock dividends received by the trustee, which represent in whole or in part profits accrued since the inception of the trust and subsequent to the acquisition of the stock in respect of which the stock dividend is issued, becomes "primarily a question of the construction of the will or trust deed with a view to ascertaining the intention of the testator."[4]

The trial judge held that "Taking into consideration the date of the will and the date at which the testator died (1876) and the language '*income* from the same to be paid *in quarterly payments*', it is the normal construction that such language refers to *cash* income." (Italics his.)

With this conclusion of the trial judge we cannot agree. It is true that the words "paid" and "payments" usually refer to cash. But they also may be used in the sense of transfer.[5] And where the words "paid" or "payments" are used in connection with the word "income," the significance of the former is controlled by the latter. The trial judge mistakenly put the emphasis on the words "paid" and "payments" instead of upon the word "income." The dominant intention of the testator is to be deduced not alone by the primary import of the verb "paid" and

---

[4] *Carter* v. *Crehore*, 12 Haw. 309, 311.

[5] *Clarke's Appeal from Probate*, 70 Conn. 195, 39 Atl. 155.

of the noun "payments" but by the subjects of such payments accordingly as they were included in or excluded from the term "income." In our opinion the word "income," as used and employed by the testator in the seventh paragraph of his will, included stock dividends to the extent that they represented income accrued since the inception of the trust and after acquisition of the stock in the corporation in relation to which such stock dividends were issued. As so used, the words "paid" and "payment" were used by the testator in their secondary sense of transfer.

In the *Carter* case the testator devised and bequeathed all of his residuary estate to trustees and, after making provisions for an annuity to his mother, provided: "To hold one sixth of my said estate in trust, for my daughter * * * the income thereof to be paid her in quarterly payments for the term of her natural life, and after her death I give devise and bequeath the said one sixth to her heirs to be divided as now prescribed by the laws of this kingdom in cases of persons dying intestate." By the same paragraph of the will the testator made similar provisions for his other five children. In other words, the provisions for each child in the third paragraph of the will of the testator in the *Carter* case are identically the same as the provisions of the seventh paragraph of the will of the testator for each of his eight children in the instant case.

It is sufficient for the purposes of this case to refer to the reasoning employed and the conclusion arrived at in the *Carter* case.

The trial judge also held that stock dividends were not apportionable as between income and corpus. He had previously come to that conclusion in the matter of the estate of Bathsheba M. Allen, deceased, involving similar questions and adopted his opinion in the *Allen Estate*

case incorporating so much of his decision re stock dividends in the *Allen Estate* case as was applicable, identifying the same by the page numbers of his opinion in that case. The decree of the trial judge in the matter of the estate of Bathsheba M. Allen, deceased, upon appeal was reversed in this court. (See *Estate of Allen, ante*, p. 501.) We deem it unnecessary to comment upon this branch of the case further than to say that the opinion of this court in the *Allen* case, to the extent that it is applicable herein, is hereby adopted as the opinion in the instant case on the rule of apportionment of stock dividends as between equitable life tenants and remaindermen.

The defense of *res adjudicata* involves the legal effect of two orders approving accounts filed in the matter of the trust estate of James Robinson, deceased, *viz.*, the orders of the circuit judge of May 22, 1916, and May 23, 1916. It is based upon the claim that both proceedings, which were determined by the respective decrees of May 22, 1916, and May 23, 1916, involved the issue of apportionment by the trustees of stock dividends received by them during the years 1910 and 1912; that the propriety of the retention by the trustees of such stock dividends as part of principal of the trust estate was adjudicated adversely to the life tenants and that Matilda A. Foster and since her death her legal representative were barred in respect to such stock dividends from again litigating the right of the trustees to retain the same as principal of the trust estate of their decedent.

The opinion of the trial judge is silent upon the issue of *res adjudicata*. The facts involved are material, however, to the additional defenses of waiver and estoppel. Moreover, due to our conclusion that the decree must be reversed upon other grounds and further proceedings had below consistently with our reasons therefor, it appears advisable that the defense of *res adjudicata* be disposed

of at this time so that no obstruction remain to prevent the trial judge upon remand from giving timely consideration to the remaining issues and disposing of the case.

Prior to January 12, 1914, neither by statute nor rules of court were trustees required to file accounts in the court of their appointment. Upon that date rule twenty of the first circuit court went into effect, requiring trustees within ten days next after the expiration of one year from the date of their appointment or last accounting or after the termination of their trust, by operation of law or otherwise, to make their annual or final accounting. In 1915, by Act 101 of the legislature of that year (effective April 16, 1915), every trustee under appointment of any court or judge, with certain immaterial exceptions, was required to file annually with the court or judge so appointing him an account showing in detail all of his receipts and disbursements, together with a full and detailed inventory of all property in his possession or under his control.

Upon the death of M. P. Robinson as sole surviving trustee under the will and of the estate of James Robinson, deceased, J. Lawrence P. Robinson, as his legal representative, occupied the position of a bailee or constructive trustee charged with the duty of preserving the property intact for the purpose of turning it over to the persons entitled thereto and of settling the accounts of the deceased trustee. Upon the death of a trustee, where no successor has been appointed, the personal representative of decedent is under the duty of accounting under the trust.

On March 31, 1916, J. Lawrence P. Robinson, as administrator of the estate of his father, M. P. Robinson, deceased, filed in the circuit court of the first circuit, at chambers in equity, a petition for the allowance of the annual accounts of Mark P. Robinson, as trustee under the will and estate of James Robinson, deceased, for the

period commencing March 12, 1909, and ending March 12, 1915. In his petition he alleged that his father had, during his lifetime, prepared six annual accounts as such trustee for the period named and had signed all of said accounts except the last and that he presented the same with said petition. Such of the accounts as were offered and received in evidence sustain the allegation. Mr. Robinson did not file any independent accounts other than his account as temporary trustee of the trust estate of James Robinson, deceased, to which we hereafter refer. The accounts prepared by Mark P. Robinson were verified by J. Lawrence P. Robinson as administrator of the estate of Mark P. Robinson, deceased. The accounts themselves were also signed by J. Lawrence P. Robinson as administrator of the estate of James Robinson, deceased. As far as we know, however, Mr. J. Lawrence P. Robinson was never the administrator of the estate of his grandfather, James Robinson. This is a manifest clerical error. The petition for the allowance of the accounts also alleges that the petitioner, on April 15, 1915, had been appointed temporary trustee under the will and of the estate of James Robinson, deceased, and that he had qualified as such on April 30, following, and that upon said last-named day, as administrator as aforesaid, he had delivered possession of the property, real, personal and mixed, of the estate of James Robinson, as shown by the inventory filed therewith, together with all books of account, to himself as said temporary trustee and, as such temporary trustee, had taken over said accounts as of April 1, 1915. The prayer, in addition to the request for appointment of a time and place of hearing, prayed that said accounts be examined and allowed; that an order be entered approving the delivery by the petitioner of the property of the trust estate to himself as temporary trustee and that an order be made discharging petitioner as administrator

of the estate of Mark P. Robinson, deceased, from all further responsibility.

Upon the filing of such petition, the presiding judge at chambers of the first circuit court on, to wit, March 31, 1916, entered an order fixing the time and place of the hearing of said petition and directed that notice of said order be published in the Pacific Commercial Advertiser once a week for three successive weeks, the last publication to be not less than two weeks previous to the time therein appointed for said hearing. At the same time the circuit judge referred said accounts to a master. The order was published in the manner directed.

The notice of March 31, 1916, as published, is entitled, "IN THE CIRCUIT COURT, FIRST CIRCUIT, TERRITORY OF HAWAII. In Equity—At Chambers IN THE MATTER OF THE TRUST ESTATE of JAMES ROBINSON, Deceased." It contains the notice: "ON READING AND FILING the Petition of J. LAWRENCE P. ROBINSON, Administrator of the Estate of Mark P. Robinson, deceased, and six annual accounts of said Mark P. Robinson as surviving trustee under the Will of James Robinson, deceased, for the period commencing March 12, 1909 and ending April 1, 1915, wherein petitioner asks that the same be examined and approved, and that a final order be made approving the Distribution of the remaining property to the Temporary Trustee appointed by this Court in the above entitled matter, and discharging the Estate of said Mark P. Robinson from all further responsibility herein." After stating the time and place of hearing it concludes: "All persons interested may then and there appear and show cause, if any they have, why the same should not be granted."

At the same time that Mr. Robinson filed his petition as administrator of the estate of Mark P. Robinson, deceased, praying the allowance of the accounts of the latter

as trustee of the James Robinson trust, he filed a petition for the allowance of his own account as temporary trustee under the will and of the estate of James Robinson, deceased, for the year ending March 12, 1916. It will be remembered that on the 15th day of April, 1915, J. Lawrence P. Robinson had been appointed temporary trustee under the will of James Robinson, deceased. In his petition he alleged the fact and time of his appointment and that he had qualified as such temporary trustee on April 30, following. His petition also alleged that on March 8, 1916, Robert B. Booth, T. Edgar Robinson and the petitioner himself had been appointed trustees under the will of James Robinson, deceased, and had qualified as such on March 10, following. He prayed that said account be examined and allowed and that an order be made to deliver over such property as remained to the permanent trustees and that he be discharged from all further responsibility therein, his bond as temporary trustee canceled and the surety thereto released from further obligation.

Similarly as in the case of the preceding petition, the presiding judge at chambers fixed the time and place of hearing, ordered its publication in the same manner and referred the account accompanying the petition to the same master to whom had been referred the previous six annual accounts. This second notice was published in the manner directed. It, similarly as its prototype, was entitled, "IN THE CIRCUIT COURT, FIRST CIRCUIT TERRITORY OF HAWAII, In Equity At Chambers. In the Matter of the Trust Estate of JAMES ROBINSON, Deceased," and recites: "On reading and filing the petition and accounts of J. Lawrence P. Robinson, Temporary Trustee under the will of James Robinson, deceased, wherein petitioner asks to be allowed $41,012.55 and charged with $42,375.96, and asks that the same be

examined and approved, and that a final order be made discharging petitioner and surety from all further responsibility herein; It is ORDERED that * * * [time and place of hearing inserted] be and the same hereby is appointed the time and place for hearing said petition and accounts, and that all persons interested may then and there appear and show cause, if any they have, why the same should not be granted."

The master reported upon all seven accounts, i.e., the six annual accounts filed by Mr. Robinson in his capacity as administrator of the estate of his father and the single annual account filed by him in his capacity as temporary trustee of the trust estate of James Robinson, deceased. The master, with certain exceptions immaterial to the issues, recommended the approval of all seven accounts and in his report called the attention of the circuit court, before whom the petitions for their allowance were pending, to the stock dividends received by the trustees from Wailuku Sugar Company, Limited, in 1910 and to those received from the Pioneer Mill Company and Oahu Sugar Company in 1912 and commented upon the fact that no apportionment thereof had been made by the trustees.

Upon hearing had, all seven accounts were approved by the presiding judge at chambers, the approval of the six annual accounts of J. Lawrence P. Robinson, as administrator of the estate of Mark P. Robinson, deceased, being the subject of the decree of May 22, 1916, and the approval of the annual account of J. Lawrence P. Robinson, as temporary trustee, being the subject of the decree of May 23, 1916. It is conceded that Matilda A. Foster did not appear upon these proceedings and took no part therein.

The decree of May 22, 1916, ordered that the six annual accounts of the deceased trustee, Mark P. Robinson, be approved, allowed and settled subject to certain payments

in accordance with the report of the master; that J. Lawrence P. Robinson, as administrator of the estate of Mark P. Robinson, deceased, be discharged from the trust of said Mark P. Robinson, as such trustee under the will of James Robinson, deceased; that J. Lawrence P. Robinson, administrator of the estate of M. P. Robinson, deceased, be authorized, etc., to deliver over to himself as temporary trustee under the will of James Robinson, deceased, all of the property belonging to the trust estate remaining in his hands and that upon filing proper receipts the order of discharge to take effect and continue in force. The order of May 23, 1916, approved the accounts of Mr. Robinson as temporary trustee subject to the payment of certain amounts in accordance with the supplementary account of the master, discharged Mr. Robinson from his trust as temporary trustee and authorized, etc., him as such temporary trustee to transfer to himself, Robert B. Booth and T. Edgar Robinson, as trustees under the will of James Robinson, deceased, all of the property belonging to the estate of said decedent remaining in his hands and that upon the filing of proper receipts the order of discharge to take effect and be and continue in force.

The circuit judge at chambers unquestionably had jurisdiction of the respective matters which were the subjects of the two petitions of March 31, 1916, for the allowance of accounts. But in our opinion, he never acquired jurisdiction of the person of Matilda A. Foster as a party to either of said petitions and the decrees of May 22, 1916, and May 23, 1916, as to her, are void.

The petitions of March 31, 1916, were "cases" within the meaning of the word "case" as used and employed in R. L. H. 1915, § 2480, and service of process when issued therein was subject to the provisions of that section.

From the manner of publication and the time intervening between the last publication and the date of hearing, it is reasonable to assume that the respective notices of pendency of the petition and time and place of hearing followed the procedure required under rule eighteen of the rules of the circuit court of the first circuit in respect to petitions for the appointment of executors and administrators. No objection has been made to the reasonableness of such notice. At the time the respective petitions for allowance of accounts were filed, section 2480 authorized substituted service by publication in proceedings in equity in all cases described *eo nomine* in R. L. H. 1915, § 2478, or of similar character.

The full text of section 2480 is quoted in the margin.[6] Section 2478 refers to actions in equity *in rem* or *quasi in rem*. Leaving out of consideration the effect of the 1915 accounting in respect to the termination by her death of the trust created of which Bathsheba M. Allen was beneficiary, all of the six accounts filed as a group by J. Lawrence P. Robinson as administrator of the estate of his father, had the latter not died, would have been simply annual intermediate accounts. Such accounts are usually *in personam*.[7] Due to the death, however, of Mark P. Robinson as sole surviving trustee, they assumed

---

[6] "Sec. 2480. Service of process. When process is issued in any such case, it shall be served by delivery of a copy of the petition and of the summons to the defendants, or in case they cannot be found, by leaving such copy with some one upon the premises involved in the controversy, or in such other manner as the judge may direct. The officer charged with service of the process shall also, if so directed by the judge, publish in a newspaper or newspapers suitable for the advertisement of notices of judicial proceedings, a notice of such suit or proceeding, calling upon all persons interested to appear and show cause against it, at the time and place appointed for the hearing."

[7] *Parsons* v. *Lyman*, 32 Conn. 566, 576, 18 F. Cas. 10780, 5 Blackf. 170.

the dignity of a final accounting by the administrator of his estate for the entire period covered by said accounts, not alone in respect to receipts and disbursements but also in respect to distribution of the assets of the trust estate. Similarly as to the account subject to the second petition. While ordinarily it would have been considered merely an annual intermediate account, it covered the period during which J. L. P. Robinson was the temporary trustee and hence, in addition to the itemization of his receipts and disbursements, it included a statement of the assets of the trust estate distributable by the temporary trustee to the permanent trustees theretofore appointed. From an examination of the petitions for the allowance of accounts and the accounts to which they relate, it is apparent that there were presented to the court not alone the accounting for receipts and disbursements but also distribution of the trust *res* and the release of the legal representative of the deceased trustee on the one hand and the temporary trustee on the other of all liability in respect to the administration of the trust by the predecessor trustee and his successors in trust. The trust was an Hawaiian trust. The assets of the trust, both real and personal, were in Hawaii and in the possession of trustees. The proceedings to that extent were *quasi in rem* and of the same character as those matters referred to in section 2478. Where, as here, the administrator of the estate of a deceased sole surviving trustee accounts under the trust to the appropriate court and petitions the court for his release as the legal representative of the deceased trustee from all responsibility in respect of the trust and that he be authorized to distribute the trust *res* then in his possession and control to himself as temporary trustee of said trust, the proceeding thus initiated is a "case" of the character referred to in section 2478 within the meaning of the word "case" as that term is used and employed in

section 2480. Similarly, where, as here, a temporary trustee files in the appropriate court an account covering the period of his incumbency as temporary trustee accompanied by a petition praying the allowance of said accounts and that he be authorized to distribute the trust *res* to the permanent trustees of said estate theretofore appointed, such proceeding is a "case" of the character referred to in section 2478, within the meaning of the word "case" as that term is employed in section 2480.

The legal effect of substituted service in cases of the character described in section 2478 by publication is no longer a subject of controversy in this jurisdiction. The provisions of section 2480 in respect to substituted service by publication were construed in 1897 by this court in the case of *Byrne* v. *Allen*, 10 Haw. 668, and it was there held that under section 1230 of the Civil Code of 1859, which, as amended by Haw. Laws 1903, c. 5, § 1, was incorporated in R. L. H. 1915, as section 2480, where the object of the proceeding was to reach the property of an absent defendant and not to determine his personal liability, personal service was not essential and substituted service might be made upon him in any of the methods authorized by section 1230 of the Civil Code as it should seem most applicable to the court. The *Byrne* case was expressly affirmed in *Borges* v. *Encamacao*, 20 Haw. 638, 647. Moreover, it was the uniform practice of the judges of the circuit courts in similar cases to invoke the provisions of section 1230 of the Civil Code of 1859, as originally enacted or as subsequently amended, for the purpose of securing jurisdiction of the persons of absentee beneficiaries of trust estates where the proceedings were similar to the character of the cases enumerated in the Civil Code of 1859, § 1228, and as subsequently amended, incorporated in the revision of 1915 as section 2478.

But the circuit judge failed to comply with the provisions of R. L. H. 1915, §§ 2479 and 2480. Section 2479 is quoted in the margin.[8]

In 1916 and at the time of the pendency of the two petitions for allowance of accounts, summonses at chambers in equity were not issuable as of right. Chambers summonses were only issuable by the clerks of the circuit court, under the powers reposed in them by R. L. H. 1915, § 2320, when ordered by the circuit judge at chambers, pursuant to the powers reposed in him by the provisions of R. L. H. 1915, § 2272, and after his determination *ex parte* upon the propriety of granting the process prayed for under the provisions of section 2479.

No summons was issued out of the first circuit court either in term or at chambers upon the filing of the petitions for the allowance of accounts of March 31, 1916.

Moreover, it does not appear that at that time Matilda A. Foster could not be found and that personal service could not be made upon her in conformity with the provisions of section 2480. The record is entirely silent upon the subject. If resort might be had to the evidence taken upon the trial of this case, it affirmatively appears that on May 27, 1915, when she signed and acknowledged her power of attorney to E. H. Wodehouse, she was a resident of Honolulu.

We do not deem it necessary to decide whether the provisions of R. L. H. 1915, § 2356, apply. By the provisions of that section, it is expressly provided that if the defendant "was never an inhabitant of the Territory or has removed therefrom, or if, after due diligence, he can-

---

[8] "Sec. 2479. Process ex parte or after hearing. Upon the filing of such petition, the judge shall determine, ex parte, upon the propriety of granting the process prayed for. In cases not demanding secrecy, or occasioning doubt, the judge may, before issuing process, grant an order to show cause, and make any interlocutory order in the matter which may appear necessary to the ends of justice."

not be found within the Territory of Hawaii, and the fact shall appear by affidavit to the satisfaction of the court or a judge thereof at chambers * * * such court or judge may grant an order that the service be made by publication of the summons." If section 2356 were applicable, obviously its provisions were not complied with in the instant case. Assuming, but not deciding, that section 2480 is exclusive in respect to service of chambers summons in proceedings in equity of the same character as those enumerated in section 2478, we are of the opinion that under the provisions of section 2480, similarly as under the provisions of section 2356, before substituted service can be ordered it must affirmatively appear that the defendant cannot be found and hence personal service cannot be made.

Section 2480 permits constructive service only when personal service cannot be obtained. If Matilda A. Foster was within the jurisdiction of the circuit court, personal service was mandatory. In the absence of any showing that Matilda A. Foster could not be found, service, as to her, was not made in compliance with the statute. One of the essentials of due process is notice. And the provisions of section 2480 contemplate that where parties in interest cannot be found and personal service cannot therefore be made the facts be called to the attention of the circuit judge so that in the exercise of his discretion he may direct service to be made "in such other manner" as may be reasonably calculated to give notice of the pendency of the proceedings. With such knowledge before him, he may, in his discretion, order that service be made by publication. He may also, in his discretion, adopt means of service other and additional to service by publication, such as personal service outside of the jurisdiction or service by registered mail where the address of the absentee is known. There have been instances, where

the respective residences of absentees were unknown, of duplicate publication of notice of pendency of proceedings and time and place of hearing in the metropolitan area, county or State of last-known places of residence. Mrs. Foster's whereabouts during the pendency of the petitions was no doubt known to her nephew, J. L. P. Robinson, and were she without the Territory at that time and her absence called to the attention of the circuit judge, he would have, in his discretion, ordered other and additional methods of service more reasonably calculated to give her notice of the pendency of the proceedings. The statute contemplates the exercise of a judicial discretion and, where it affirmatively appears that no judicial discretion was exercised, the statute obviously has not been complied with. There must be a substantial compliance with the statute. Where, as here, upon the filing by trustees in the circuit court at chambers in equity of a petition for the allowance of accounts, discharge and distribution to successor trustees, the propriety of granting the process prayed for is not determined by the circuit judge and no summons of any kind is issued and the only means employed to give a *cestui que* trust notice of the pendency of the proceedings and the time and place of hearing is by publication and the record fails to show good cause for the failure of the issuance of summons and service by delivery of a copy of the petition and of a summons to the *cestui que* trust, such substituted service by publication is ineffectual to confer upon the circuit judge at chambers jurisdiction of the person of the *cestui que* trust.

It would be sufficient to dispose of the defense of *res adjudicata* on the sole ground of failure of jurisdiction of the person of Matilda A. Foster. Due, however, to the presence of the defenses of waiver and estoppel, it becomes necessary to pursue the subject further.

Additional ground exists compelling us to refuse to accord to the decrees of May 22 and May 23, 1916, any conclusive effect upon the alternative issues presented by the bill in this case of whether the word "income," as employed in the seventh paragraph of the will of the testator, included stock dividends and if so whether the same are apportionable between income and principal of the trust estate accordingly as they represent in whole or in part profits of the corporation accrued since the inception of the trust and since the acquisition of the stock in respect of which said stock dividends were issued. It clearly appears from the record that these issues were not litigated.

Upon a petition for the allowance of accounts, the petition and accounts to which the former relates constitute the pleadings. In the proceedings for the allowance of accounts, no pleadings were filed by any of the parties in interest other than the trustees. The only pleadings before the court, therefore, were the respective petitions and the respective accounts to which the same referred. The petitions themselves neither limit nor enlarge the issues presented by the respective accounts.

The accounts referred to in the respective petitions were made upon the usual forms provided by the circuit court clerk's office for that purpose, consisting of schedule "A," containing cash receipts, schedule "B," containing cash disbursements and schedule "C," showing the cash credit or debit balance for or against the trustees. Only one set of schedules was included in each account. Schedules "A," "B" and "C" referred to principal and income indiscriminately. The 1911 account, covering the period within which the Wailuku Sugar Company stock was issued, contains no entry thereof. The 1913 account, which covers the period within which were issued stock dividends by the Pioneer Mill Company and the Oahu

Sugar Company, merely contains statements in schedule "A" to the effect that the trustees had "received" so many shares of stock as a stock dividend and that "their present holdings" were so many shares, giving the resulting aggregate amount, inclusive of the stock dividend. Both statements are in the nature of journal entries. The 1911, 1914, 1915 and 1916 accounts contain trial balances and the 1911 and 1915 accounts contain inventories in which appear the number of shares of stock held by the trustees for the time being in Wailuku Sugar Company, Pioneer Mill Company and Oahu Sugar Company. The number of shares noted include the stock dividends theretofore received. In all of the accounts schedule "A" showed the number of shares upon which cash dividends had been received. After the receipt of stock dividends, the number of shares indicated in every instance included the stock dividends theretofore received by the trustees.

The purposes of initial pleadings are to advise the court and adverse parties of the cause of action upon which the pleader relies and to define the issues and form the foundation of the proof to be submitted upon the hearing in support thereof. Obviously no issues in respect to stock dividends were presented by the 1911 account. It is only by comparison of that account with its immediate predecessor that it appears that the holdings of the trustees in stock of Wailuku Sugar Company were augmented. But whether such increase was the result of a stock dividend does not appear, except as it may be implied by the absence from schedule "B" of any disbursement on that account. The same may be said of the entries in respect to cash dividends found in schedule "A" of all of the accounts. The only entries in all of the seven accounts that directly alleged the receipt by the trustees of stock dividends were those contained in the 1913 account. And in our opinion neither entries presented to the court or

gave notice to adverse parties of the issues attributed to them. The entries do not disclose, nor can it be ascertained therefrom, whether the trustees credited the stock dividends referred to either to income or principal of the trust estate. On their face they are merely admissions by the trustees of the receipt by them of stock dividends for which they were accountable as a part of the trust *res*. Neither the construction of the will nor the question of apportionment was necessarily involved in the settlement of the accounts. If it were necessary that apportionment be made, that duty could have been performed by successor trustees as well as the accounting trustees. Distribution would not absolve the successor trustees from that duty. Nor did the inclusion of stock dividends in the number of shares held by the trustees in the trial balances and inventories necessarily mean or imply that the trustees had converted stock dividends to corpus. If, as we here hold, the term "income," as used in the seventh paragraph of the will of the testator, included stock dividends, the legal effect of a conversion of stock dividends to corpus would be a breach of trust. But in the case of an express trust the presumption is that the possession of the trustee is the possession of the *cestui que* trust and that the trustee is administering the *res* in accordance with the terms of the trust.[9] All of the accounts are consistent with the presumption that the stock dividends in question were in the possession of the trustees for the benefit of the life tenants and the ultimate remaindermen in accordance with the terms of the trust.

Nor did the suggestion of the master contained in his report enlarge the issues presented by the respective petitions and accounts. Diligence upon the part of masters

[9] *Lewis* v. *Hawkins*, 23 Wall. 119, 126; *Railroad Co.* v. *Durant*, 5 Otto 576 (U. S.) ; *Merritt Oil Corporation* v. *Young*, 43 F. (2d) 27, 31.

to whom are referred accounts of trustees is to be commended. The presence of stock dividends and their non-apportionment were a proper subject of suggestion. But the issues were established by the petitions and accounts themselves. Upon the face of the record the best that could be said was that the proceedings were before the circuit judge upon substituted service and he very properly, in the light of the pleadings, refused to take cognizance of the subject matter of the suggestion. Other circuit judges, *viz.*, the one having jurisdiction of the 1917 account of the trustees and the one having jurisdiction of their 1920 account, took a similar position. The same master who reported upon the accounts of 1910 to 1916, both inclusive, was subsequently twice appointed to examine and report upon accounts of trustees, *viz.*, the 1917 and 1918 accounts. In reporting upon these accounts, he in both instances again referred to the question of apportionment of stock dividends. The circuit judge, upon the occasion of each hearing, ignored the suggestion of the master. The master to whom was referred the 1920 account of the trustees also reported at length upon apportionment of stock dividends. But the circuit judge before whom the account was pending expressly refused to pass upon the question.

Upon the favorable report of the master the accounts were approved *pro forma*. The respective decrees follow the prayers of the respective petitions upon which they were predicated but are silent upon the subject of apportionment. The conclusion is unescapable that the issues here presented were not litigated upon the petitions for allowance of accounts of March 31, 1916.

The causes of action pleaded in the petitions for allowance of accounts filed March 31, 1916, are entirely different, separate and distinct from those presented by the bill of complaint in the instant case. By the petitions

for allowance of accounts were sought the allowance and
approval by the court of the respective receipts and dis-
bursements set forth in the accounts, the discharge of the
accounting officer and the disposition of the trust *res* to
successor trustees. On their face they were not intended
to include and as a matter of pleading did not include
the issues presented in this case. The within action is a
direct proceeding by the trustees for instructions upon
matters never heretofore presented, litigated nor adjudi-
cated. The burden of proof of estoppel by judgment or
verdict is upon him who asserts it. This burden has not
been met in the instant case. The evidence fails to show
that the issues now being litigated in this case in respect
to the 1910 and 1912 stock dividends were litigated upon
the petitions for allowance of either the 1911 or 1913
accounts. Where, under the pleadings in a former pro-
ceeding, a point is neither in issue nor necessarily in-
volved and upon trial or hearing is not litigated, it is
not concluded for the purposes of a subsequent suit upon
a different cause of action.[10]

There is also the claim made in one of the briefs that
the decrees of August 6, 1917, June 1, 1918, and May 7,
1920, approving the respective accounts of the trustees
for the years ending March 12, 1917, March 12, 1918, and
March 12, 1920, are conclusive upon Matilda A. Foster in
respect to the stock dividends issued by the Oahu Sugar
Company and the Pioneer Mill Company in 1916 and the
stock dividends issued by the Waialua Agricultural Com-
pany in 1917. It appears that the accounts subject to the
respective petitions referred to were intermediate accounts,
the hearings upon which were had without notice to the
parties in interest and that Matilda A. Foster did not

---

[10] *Mossman* v. *Hawaiian Government*, 10 Haw. 421; *Haw. Com. &
Sug. Co.* v. *Wailuku Sug. Co.*, 14 Haw. 50, 54; *In Re Schaefer's Estate*,
182 N. Y. S. 732, 734; *Estate of Blake*, 157 Cal. 448, 108 Pac. 287.

participate therein. As stated in *Estate of Allen, ante,* p. 501: "An order or decree approving an annual trust account does not become *res adjudicata* as to matters not actually adjudicated by the court nor is it binding upon parties not duly notified and who do not participate in the proceedings."

We shall now proceed to a discussion of the defenses of waiver and estoppel.

Waiver is generally defined as "the intentional relinquishment of a known right," "a voluntary relinquishment of some rights" and "the relinquishment or refusal to use a right." We shall consider the defense of waiver accordingly as the legal concepts of waiver may be distributable to and considered under the subjects of contract and estoppel.

The claims upon which the defenses of waiver and estoppel are predicated are best appreciated by reference to the answers filed by the appearing heirs-at-law.

The joint answer of Iwalani A. Robinson, Pualeilani Jaeger and T. Edgar Robinson, guardian of the estate of Pualeilani Jaeger, a minor, alleges in substance that beginning with April 1, 1910, and thereafter on at least six other occasions scattered through the years until the year 1935, the trustees received from four different corporations stock dividends and in each and every instance treated the same as capital and retained the same as capital, distributed the cash dividends received thereon to those entitled to income and upon the death of each of the several life tenants who had died (except upon the death of Matilda A. Foster) distributed one-eighth of the capital of the trust estate to those who were the heirs of each life tenant so dying and therefore entitled as remaindermen; that the receipt by the trustees of such dividends and the retention and treatment thereof as capital were well known to all of the life tenants and were

approved, consented to and acquiesced in by them until 1935 or thereabouts and that until 1935 or thereabouts no life tenants, past or present, in court or out of court, made any demand or claim that said stock dividends or any part thereof should be apportioned to the life tenants or that the whole capital thereof had been improperly held by the trustees as capital. The answer of Marion Jaeger Worthington alleges in substance that as each income-taker under the trust died, a one-eighth portion of the corpus had been distributed in fee to the heirs-at-law of the deceased income-taker; that such portions so distributed had included a portion of the stock dividends which had been declared and paid to and retained by the trustees of the trust estate as corpus during the life of the income-taker; that Matilda A. Foster was an heir of certain of the income-takers, to wit, J. N. Robinson, Bathsheba M. Allen and Mary E. Foster, and received as such heir a portion of each of three one-eighth shares of the corpus, including such stock dividends; that by accepting such distributions to her in fee as such heir, said Matilda A. Foster ratified the action of the said trustees in retaining said stock dividends as corpus; that had she wished to disaffirm such action by the trustees she would have repaid the value of such stock dividends so received as such heir to the trust estate and demanded, in lieu thereof, such dividends as might have been apportionable to her one-eighth share in the income of said estate and that the testamentary heir of Matilda A. Foster was now estopped from claiming said stock dividends or any portion thereof or any proceeds therefrom inasmuch as said Matilda A. Foster during her lifetime actively adopted a contrary position in regard to said stock dividends by ratifying the action to said trustees and participating in the distribution of said stock dividends as corpus. By her answer, this respondent also alleges that it affirmative-

ly appeared from the records and files of the first circuit court in the matter of the trust estate of James Robinson, deceased, that Matilda A. Foster had due notice and knowledge from time to time of the receipt of said stock dividends by the James Robinson estate; that no objection had been made by her to the retention of said stock dividends by the trustees as corpus; that three-fourths of said estate had already been distributed in fee to various heirs of the various life income-takers upon the basis that said stock dividends were properly a part of the corpus and that such distributions had included portions of said stock dividends.

The answers of the remaining appearing heirs-at-law are substantially to the same effect.

At the outset, so there may be no misunderstanding as to the evidence considered by us in coming to our conclusions upon the defense of waiver and estoppel, we wish to state in advance our position in respect to certain evidence received and considered by the trial judge and certain evidence to which one of the respondents has referred in her brief, not admitted below nor included in the record on appeal in this case but on file in this court as a part of the record on appeal in the matter of the estate of Bathsheba M. Allen, deceased, number 2367, of which she desires us to take judicial notice. The conversation between Matilda A. Foster and her agent and attorney in fact, to which the latter testified as having occurred in San Francisco in the year 1916, will not be considered. What was said by her at that time, specifically with reference to stock dividends, apparently related to anticipated stock dividends in the Allen estate in which she was a *cestui* and her agent and attorney in fact was one of the trustees. This was immaterial. Also what she said in respect to stock dividends generally without any particular reference to the James Robinson estate was

immaterial, the same admittedly never having been communicated to the trustees of the James Robinson estate. Included in the evidence is certain correspondence between Matilda A. Foster's San Francisco counsel and her local attorney in relation to an interest in stock dividends to which Mrs. Foster was entitled as a beneficiary in the Allen estate. This evidence was immaterial to the issues in this case and will not be considered. The letter of October 5, 1937, from Lucy H. McWayne to Mr. Lawrence Robinson, to the extent that it refers to her feelings in respect to stock dividends in conversations which she had with her sisters, including Matilda A. Foster, is hearsay and is not considered. The evidence of which one of the appearing heirs-at-law desires us to take judicial notice is the deposition of T. Edgar Robinson. This deposition was taken in the circuit court in the matter of the estate of Bathsheba M. Allen, deceased, and came up to this court upon the appeal taken in that case. The deposition of T. Edgar Robinson was not introduced in evidence in this case upon the trial had before the circuit judge. It was not offered in evidence nor of its existence or contents was the trial judge requested to take judicial notice. A trial judge is not authorized to consider the evidence of a witness taken upon deposition in another case.[11] What the trial court cannot judicially notice an appellate court cannot notice when sitting in review of its decree.[12] While this court may take judicial notice of its own records for certain purposes, it cannot take judicial notice of what is contained in another and distinct case, unless it is made a part of the record under consideration.[13]

Next to be considered is the defense of waiver to the extent that it involves the existence of any contract, ex-

---

[11] *Monte Vista Co.* v. *Centennial Co.*, 24 Colo. App. 496, 135 Pac. 981.
[12] *Pacific Iron & Steel Works* v. *Goerig*, 55 Wash. 149, 104 Pac. 151.
[13] *Ocala Nor. R. R. Co.* v. *Malloy*, 68 Fla. 430, 67 So. 93.

press or implied, by which Matilda A. Foster waived her rights to unapportioned stock dividends in the possession of the trustees of the trust estate of James Robinson. No claim is made that Matilda A. Foster expressly renounced, released or otherwise disposed of her interests in the unapportioned stock in question. She was absolutely silent upon the subject. Mere silence as to a claim cannot be construed to constitute a release thereof.[14]

Nor is there any evidence from which waiver may be implied. The only evidence remotely suggesting the existence of any agreement of any kind is the uniformity with which, after the receipt of the first stock dividend in 1910 upon the death of each of the five equitable life tenants who predeceased Matilda A. Foster, distribution to the heirs-at-law of the income-taker included the share of the latter in unapportioned stock dividends and in two instances (the deaths of Bathsheba M. Allen and Mary E. Foster) Matilda A. Foster participated in the distribution as an heir-at-law. The respective dates of death of the beneficiaries named in the seventh paragraph of the will of the testator who predeceased Matilda A. Foster are set forth in the margin.[15]

The trial court found that "in conformity with the natural construction, above, she [Matilda A. Foster] *acquiesced with her sisters*, Annie Jaeger, Mary E. Foster, Victoria Ward and Lucy H. McWayne in having said stock dividends treated and held as corpus by the trustees." (Italics ours.) He also found that the fact that Matilda A. Foster shared as an heir-at-law in stock dividends treated as corpus "corroborates the evidence of *mutual*

[14] *City Nat. Bank of Huron* v. *Fuller*, 52 F. (2d) 870, 877.

[15] John N. Robinson, March 25, 1890; Bathsheba M. Allen, February 11, 1914; Mark P. Robinson, April 2, 1915; Annie Jaeger, November 29, 1921; Mary E. Foster, December 19, 1930; Victoria Ward, April 11, 1935.

*agreement* among the sisters and is in harmony with the evidence tending to show the open accounting by the trustees of all stock dividends as being treated by them by consent as corpus and as augmenting shares of stock in corporations from which annual income was being derived." (Italics ours.) Construing both statements together, we take it that the court found that a mutual agreement, either express or implied, existed between the sisters in respect to the disposition of stock dividends. Otherwise the findings are meaningless. In our opinion, however, the evidence is insufficient to establish implied waiver. "It is elementary that a waiver can take place only by the intention of the party, and such intention must be clearly made to appear."[16]

The finding of the trial judge is based upon a false hypothesis. In one of the opening paragraphs of his opinion he said: "During the past twenty-five years sundry stock dividends have been received by the trustees. The question arises whether or not stock dividends so received and *heretofore treated as corpus during the many years of the trust* are payable to her [Matilda A. Foster's] heirs under the above quotation from the will, or whether such stock dividends should have been paid to Matilda A. Foster in her lifetime and therefore now should be paid to her estate." (Italics ours.) In other words, the trial judge assumed that stock dividends received by trustees during the period indicated had been treated by them as corpus of the trust estate and that Matilda A. Foster's acts and conduct were to be judged upon this hypothesis as a major premise. But the hypothesis assumed by him has no evidence for its support.

There is no evidence that during his incumbency Mark P. Robinson treated stock dividends received by him

---

[16] *Doolittle* v. *Nurnberg*, 27 N. D. 521, 531, 147 N. W. 400. (See also *Mensforth* v. *Chicago Brass Co.*, 142 Wis. 546, 126 N. W. 41.)

as corpus of the trust estate of James Robinson, deceased, except unapportioned stock dividends in his possession after the death of Bathsheba M. Allen which had not been distributed to her during her lifetime. Moreover the record is absolutely silent as to the facts and circumstances of his distribution of such unapportioned stock dividends to the heirs-at-law of Bathsheba M. Allen. To assume that such distribution was the result of a mutual agreement between the surviving sisters is to indulge in mere speculation and surmise.

Further, it affirmatively appears that upon and after January 30, 1917, the trustees for the time being held unapportioned stock dividends distributable to Matilda A. Foster, pursuant to the advice of counsel and subject to the ultimate judicial determination of the legal status of stock dividends as between life tenants and remaindermen in a test case expected shortly to be brought by others, or upon direct proceedings by the parties in interest in the estate of James Robinson, deceased. After the receipt by the trustees in August, 1916, of the stock dividends from the Oahu Sugar Company and the Pioneer Mill Company, J. L. P. Robinson, managing trustee, sought the advice of the attorneys for the trustees as to whether stock dividends should be considered as principal or income of the estate and whether it should be divided and, if the latter, in what proportion the division should be made as between remaindermen and life tenants. On January 30, 1917, the trustees received a reply to the effect that the question would "seem to be covered by the decision in the case of *Carter v. Crehore*," but that the United States Supreme Court had laid down the rule (in the case of *Gibbons* v. *Mahon*, 136 U. S. 549), that stock dividends should go to remaindermen and not to the life tenants; that due to the conflict between the local supreme court and the United States Supreme Court it was ques-

tionable whether the ninth circuit court of appeals, to which an appeal lay from the local supreme court, would follow the decision of the territorial supreme court or would be guided by the rule laid down by the United States Supreme Court; that the writer understood that a test case would be brought in the near future and that under the circumstances they had advised trustees, where stock dividends had been declared on shares forming a part of the corpus, to hold the same until such test case had been decided. In conclusion they advised the trustees not to distribute the shares of the Oahu Sugar Company, Limited, or the Pioneer Mill Company, Limited, until the final decision had been reached. J. L. P. Robinson, upon the trial, as a witness on behalf of the trustees, testified that upon and since the receipt of this opinion they had acted upon the advice of their attorneys. On May 4, 1920, the subject matter of apportionment of stock dividends was taken up by the then trustees with E. H. Wodehouse, Esquire, as the agent of Mary E. Foster, Victoria Ward and Matilda A. Foster, W. W. Chamberlain, Esquire, the agent for Mrs. Jaeger, and T. Edgar Robinson, Esquire, the agent for Mrs. McWayne. It should be remembered that on May 3, 1920, the master to whom had been referred the 1920 accounts of the trustees made an extended report calling the attention of the court to the presence in the trust *res* of stock dividends and advising their apportionment. The report of the master apparently was the motif for the letter of May 4, following. In this letter the trustees called to the attention of the beneficiaries, through their agents, the recommendation of the master, the number of shares of stock in the Oahu Sugar Company, Wailuku Sugar Company, Waialua Agricultural Company and the Pioneer Mill Company then in their possession and the market value thereof, summing up the situation thus: "It is doubtful whether the judge

will make such an order in the absence of a request to that effect from one of the life tenants. If however, an order is made apportioning the stock dividends as recommended by the master, *the Trustees will make no objection to such order. * * * Any action, one way or the other, will have to be taken by the life tenants or the remaindermen."* (Italics ours.) In conclusion the trustees requested the addressees: "Will you kindly let us hear from you as soon as possible regarding the recommendations by the master." As anticipated by the trustees, the circuit judge, upon the hearing of the petition by the trustees for the allowance of their 1920 accounts, on May 7, 1920, entered a decree approving said accounts but expressly refused to consider the report of the master, stating that the "Master * * * having filed a report * * * recommending the distribution of certain stock dividends, which recommendation this Court is not required to pass upon at this time in the absence of any proceedings commenced either on behalf of the beneficiaries or by the Trustees of said Estate." On May 12, following, the trustees addressed a follow-up letter to Mr. Wodehouse as agent of Mrs. M. E. Foster, Mrs. Victoria Ward and Mrs. M. A. Foster and, after calling the attention of the beneficiaries to the action of the circuit judge refusing to consider the recommendation of the master, concluded: "As for the matter of stock dividends *the trustees do not feel that it is incumbent upon them to take any action in the matter."* (Italics ours.)

The record does not disclose the circumstances under which stock dividends were distributed to heirs-at-law in those instances where the income-takers left surviving lineal descendants who took by descent to the exclusion of collaterals, including Matilda A. Foster. Mark P. Robinson apparently died intestate. Whether his children succeeded to his share of unapportioned stock divi-

dends under the trust created by the will of their grand-father of which their father was the beneficiary or took under the general laws of descent and distribution does not appear. The results would be the same. And in the absence of knowledge of what the records in the matter of the administration of his estate disclose, the means by which the result was effected is left to speculation and surmise. Similarly as to the situation that obtained upon the death of Annie Jaeger. In the absence of evidence to the contrary, it is to be presumed that she also died intestate. Her children, under the circumstances, were in the same position as their cousins, the children of Mark P. Robinson, had been upon the death of their father. The results also were the same and in the absence of knowledge of what the records in the matter of the administration of her estate disclose, the means by which the result was effected are also left to speculation and surmise.

Nor are we advised of the facts and circumstances surrounding the distribution by the trustees upon the death of Mary E. Foster of the unapportioned stock dividends included in the trust estate of which she was the life beneficiary to her heirs-at-law. Although the present trustees are the same trustees who made distributions upon the occasions of the deaths of Annie Jaeger and Mary E. Foster, and J. L. P. Robinson was both the trustee of the estate of James Robinson and the administrator of his father's estate at the time of the distribution of unapportioned stock dividends of which Mark P. Robinson was the life beneficiary, neither J. L. P. Robinson nor T. E. Robinson vouchsafed any information upon the subject.

Victoria Ward died testate, leaving lineal descendants. How or when distribution was effected to her heirs-at-law of unapportioned stock dividends to which she was

entitled during her lifetime under the terms of the trust estate created for her benefit does not appear. The situation in her case is subject to the same observations as in the case of Bathsheba M. Allen.

Assuming all of the evidence considered to be true and according to it all of the inferences to which it is entitled, in the final analysis it admits merely of the inexplicable finding that Matilda A. Foster, upon the respective occasions of the deaths of Bathsheba M. Allen and of Mary E. Foster, was, as an heir-at-law, a distributee of unapportioned stock dividends. And the evidence supporting such finding is as consistent with the independent action of the trustees of the estate of James Robinson, acting alone or in concert with the legal representatives of the respective estates of Bathsheba M. Allen and Mary E. Foster, as with the existence of any mutual agreement between the sisters among themselves. John M. Robinson died in 1890 and prior to the issuance of any of the stock dividends involved in this case. Bathsheba M. Allen died in February, 1914, during the incumbency of Mark P. Robinson as sole surviving trustee of the estate of James Robinson, deceased. Mrs. Allen died testate and by her will testamentary trusts were created. Upon her death it was the duty of the legal representatives of her estate to reduce to possession unapportioned stock dividends as undistributed income. While there is no direct evidence upon the subject, if Mark P. Robinson was, during his incumbency as trustee of the Robinson estate, also the legal representative or trustee of the estate of his sister, Bathsheba M. Allen, much is explained. Upon the trial of this case (March, 1938), Ernest H. Wodehouse testified that he had been a trustee of the trust estate of Bathsheba M. Allen since 1915. He also testified that he was a trustee of the trust estate of Mary E. Foster.

It was the duty of the legal representatives of the estate of Mary E. Foster, similarly as the legal representatives of the Allen estate, to reduce to possession unapportioned stock dividends as undistributed income. The respective dates of Mr. Wodehouse's incumbency as trustee of the Allen and Foster estates do not appear. J. L. P. Robinson was the administrator of the estate of his father, Mark P. Robinson. Upon him rested the same duty in respect to the estate of his father as upon the legal representative of the Allen estate. He was a temporary trustee of the trust estate of James Robinson and since March, 1916, has been one of the permanent trustees of that estate. He testified that he was also one of the trustees of the trust estate of Bathsheba M. Allen and of the trust estate created by the will of Mary E. Foster. T. Edgar Robinson has been one of the trustees of the James Robinson estate since March, 1916. What his connections are, if any, with the Allen or Mary E. Foster estates, does not appear. Mark P. Robinson was the son of James Robinson and a brother of all of the beneficiaries named in the seventh paragraph of the will of the testator. Ernest H. Wodehouse and R. B. Booth, the latter of whom it will be remembered was a trustee of the James Robinson estate from 1916 to 1920, are husbands of daughters of Victoria Ward. J. L. P. Robinson is the son of Mark P. Robinson and a nephew of all of the beneficiaries named in the seventh paragraph of the will of the testator. T. Edgar Robinson is the husband of a daughter of one of the beneficiaries named in the seventh paragraph of the will of the testator. To the distributions as made, the legal representatives of the respective estates referred to alone could complain. Leaving out of consideration whatever conflicting interests appear and whatever may be the legal effect thereof, the evidence admits of the inference that distribution of unapportioned stock divi-

dends among the respective heirs-at-law of the deceased income-takers was dictated by the legal representatives of the estates named independently of and without consultation with the surviving income-takers and that the surviving sisters were mere passive donees. It is worthy of note that E. H. Wodehouse was the attorney in fact for Matilda A. Foster from May, 1915, until 1935, when he was succeeded by J. Lawrence P. Robinson; that in May, 1920, he was also the agent of Mary E. Foster and Victoria Ward; that at the same time T. Edgar Robinson was the agent of Lucy McWayne and W. W. Chamberlain, the agent of Annie Jaeger. Upon the trial of this case before the circuit judge, E. H. Wodehouse and J. Lawrence P. Robinson were witnesses. Neither, however, testified that he in his respective representative capacity had ever said or done anything in respect to nonapportionment of stock dividends distributable to his principals upon which waiver or estoppel might be predicated. Mr. T. Edgar Robinson and Mr. W. W. Chamberlain no doubt were available as witnesses and their evidence could have been produced had they or Mr. Wodehouse or Mr. J. L. P. Robinson to their knowledge said or done anything in their representative capacities which could be attributed to their principals and made the basis of estoppel. Mr. Wodehouse was emphatic in his denial that he had communicated the substance of the conversation he testified he had had with Matilda A. Foster in San Francisco in 1916. Moreover, it is significant that no formal renunciations or releases by income-takers of their respective interests in unapportioned stock dividends were ever secured from them and filed in court in the matter of the estate of James Robinson, deceased. If the income-takers had intended gifts to those who ultimately might be their heirs-at-law, the means of its accomplishment were simple. And who more meticulous

in the requirements of formalities and better qualified to see to their observance than men experienced in the duties of. fiduciaries. The letter of May 4, 1920, affirmatively shows that no agreement existed between the then surviving *cestuis que trustent* under the seventh paragraph of the will of the testator and the trustees in respect to stock dividends.

Next in order of consideration is the defense of estoppel. This defense, it must be remembered, was interposed not by the trustees but by the heirs-at-law. Assuming but not deciding that the defense of estoppel is available in this case to the heirs-at-law, in our opinion three of the essential elements of estoppel *in pais* are lacking, *viz.*, (a) misrepresentation on the part of Matilda A. Foster; (b) knowledge on the part of Matilda A. Foster, either actual or constructive, of the facts and their legal effect; (c) reliance by the trustees upon the actions of Matilda A. Foster to their detriment.

In our discussion of the defense of *res adjudicata* and waiver, much of the evidence there referred to is equally applicable to the defense of estoppel. In addition to that evidence, it also appeared that succeeding the seven accounts filed by J. L. P. Robinson in his capacity of administrator of the estate of his father and temporary trustee of the trust estate of James Robinson, the trustees of the latter estate "filed each and every year * * * accounts, all upon the same frame or structure, * * * in each annual account there was a Schedule A containing under every date when dividends were received a statement showing the percentage of the dividend, the stock from which it was derived and the number of shares upon which that dividend was calculated and received. Schedule B in each such account showed if any stocks were bought during the year, the date, the number of shares bought and the amount of money paid therefor;

and if no stock was bought during the year Schedule B was silent * * * . There was always a 'Trial Balance' * * * which in effect contained an inventory * * * of the four stocks which at one time or another paid stock dividends, (Wailuku, Waialua, Oahu and Pioneer) as well as other stocks, showing the number of shares held in each such corporation and the value of the stocks. In each annual account there was a 'Summary of Receipts of Income Shown in Detail in Schedule A.' This was a separate sheet, a separate part of the accounts * * * . These again showed in another form the number of shares of stock held in each corporation, including the four in question. In each account there was a 'Summary of Payments of Income Shown in Detail in Schedule B,' showing, as did Schedule B; the quarterly distributions of income to all income-takers, * * * all the annual accounts filed * * * [since 1916] followed the same form, contained the same nature of information in each Schedule A and B, in each trial balance and in each summary of receipts and summary of expenditures." In addition to the annual accounts filed in court the trustees during the incumbency of J. L. P. Robinson rendered quarterly accounts; they contained the same information and were the basis of the annual accounts. It also appeared that the managing trustee, J. L. P. Robinson, had an office in Honolulu at which he kept the accounts of the trust.

(a) There is no evidence of any representation, either oral or written, false or otherwise, made by Matilda A. Foster to the trustees of the trust estate of James Robinson, deceased, in respect to stock dividends received by the trustees or otherwise. The right to renounce income or make a gift of it to her heirs-at-law was individual with each sister. There does not appear to ever have been any direct contact between Mrs. Foster and

the trustees concerning the trust estate created for her benefit under the seventh paragraph of the will of her father. The same may be said in respect to any of the trust estates created for the benefit of her sisters. Her correspondence with her agent, E. H. Wodehouse, was purely social. It does not appear that he ever wrote to her or that she ever wrote to him upon any subject matter concerning her estate. Accounts which were furnished him by the trustees and transmitted to her were sent without comment.

It is upon the acts and conduct alone of Matilda A. Foster that any claim may be made that the trustees were misled to their detriment. Under this state of the case, it was incumbent upon the respondents pleading estoppel to show "the existence of acts * * * [and conduct] so inconsistent with the purpose of the person charged to stand upon his rights as to leave no opportunity for a reasonable inference to the contrary."[17]

The presumption is that Matilda A. Foster accepted the unapportioned stock dividends distributable to her as "income" under the terms of the trust created for her benefit.[18] The evidence fails to overcome this presumption. The only evidence implying the conversion by the trustees of unapportioned stock dividends to principal was its distribution after the death of income-takers (with the exception, of course, of Matilda A. Foster) entitled thereto. But neither to Matilda A. Foster's silence, where the income-taker left lineal descendants, nor to her participation as an heir-at-law, where the income-taker left no lineal descendants, may waiver, release or relinquishment of her interest in stock dividends apportionable to

---

[17] *Champion Spark Plug Co.* v. *Automobile Sundries Co.*, 273 Fed. 74, 79.

[18] *Darlington* v. *Darlington*, 160 Pa. 65, 71, 28 Atl. 503.

her under the terms of the trust be imputed. Her acts in that regard are not inconsistent with the continuance of the presumption. Her rights were personal to herself. Where A is the trustee of three separate and distinct trusts of each of which B, C and D are respectively the *cestuis* and B, without any false representation on her part, passively accepts benefits under breaches of trust by A of the trusts of which C and D are respectively the *cestuis*, in respect to a condition common to all three trusts, B, and after her death her legal representatives, are not estopped from claiming that similar apprehended action by trustee A of the trust of which she was the *cestui* would constitute a breach of trust.

(b)   Nor does it appear that Matilda A. Foster had knowledge, actual or constructive, of the facts or of the legal effect of the facts upon which the defense of estoppel is predicated.

By the seventh paragraph of the will of the testator were created not one but eight separate and distinct trusts, the principal of each of which was one-eighth of the residuary estate.   Upon distribution to him as sole surviving trustee under the will and of the estate of James Robinson, deceased, it was the duty of Mark P. Robinson to separate the residuary estate of his decedent into eight separate and distinct trusts and to keep the trust *res* of each separate and distinct and to account accordingly.[19] It affirmatively appears that during the incumbency of Mark P. Robinson as trustee of the estate no accounts were filed by him in the court of his appointment and as far as the record discloses no accounts were sent or transmitted to Matilda A. Foster during the period from March, 1909, to March 31, 1916.   As far as we know

---

[19] *Titsworth* v. *Titsworth*, 107 N. J. Eq. 436, 152 Atl. 869; *Moore* v. *McKenzie*, 112 Me. 356, 92 Atl. 296; *Lannin* v. *Buckley*, 256 Mass. 78, 152 N. E. 71; *Ungrich* v. *Ungrich*, 115 N. Y. S. 413, 419.

Matilda A. Foster had no knowledge of the receipt by Mark P. Robinson of stock dividends or the manner of their treatment by him after their receipt except as she may have had knowledge thereof from the distribution of unapportioned stock dividends upon the death of her sister, Bathsheba M. Allen, in February, 1914. Included in the 1915 accounts of Mark P. Robinson as an exhibit in this case is a statement under date of December 12, 1914, showing the method by which distribution was computed and made to the heirs of Bathsheba M. Allen but as far as the record discloses this statement, similarly as the account to which it relates, never found its way to Matilda A. Foster. The accounts, subject to the petitions for allowance of March 31, 1916, were, as far as we know, never served upon Matilda A. Foster. In the meantime E. H. Wodehouse became her attorney in fact. And while it appears that all accounts subsequent to the appointment of J. Lawrence P. Robinson as permanent trustee were transmitted to Mrs. Foster through her attorney in fact, it also affirmatively appears in his letters of transmittal that Mr. Wodehouse refrained from making any comment upon the accounts or the legal effect of any item thereof. What knowledge Matilda A. Foster had of the proceedings which were had before the circuit judge in chambers upon the filing of petitions for allowance of accounts subsequent to the decree of May 23, 1916, does not appear. Apparently she relied implicitly upon her agent and attorney in fact and the members of her family who occupied the position of trustees and she herself gave no personal attention to nor was she concerned with her affairs. No claim was made that the knowledge of her agent and attorney in fact was imputable to her. The accounts of the trustees from March, 1916, to the time of Matilda A. Foster's death did not indicate that the trustees had converted to corpus the stock dividends dis-

tributable to her. They, similarly as their predecessor, Mark P. Robinson, insisted upon a hodge-podge account, imposing the burden upon the income-taker to make her own calculations to ascertain the state of her account or the condition of her estate. At no time were the trusts segregated and at no time was Matilda A. Foster furnished with an exclusive account of the trust estate of which she was beneficiary. From the accounts as furnished it appeared that the aggregate of stock dividends apportionable to her were intact. What knowledge she had of the conditions existing upon the death of her sister Mary E. Foster does not appear. The receipt by Matilda A. Foster of her distributive share in unapportioned stock dividends included in the estate of which Mary E. Foster was the life tenant is signed by Ernest H. Wodehouse as her attorney in fact. It affirmatively appears that Mr. Wodehouse did not advise his principal of any of the facts and circumstances surrounding the signing of such receipt or the acceptance by him of the subject thereof. Moreover, it was the duty of the trustees of the trust estate of James Robinson, deceased, to disclose to Matilda A. Foster not only all of the facts of the distributions made by them but also her legal rights in the premises, including the legal effect, if any, of her participation therein upon unapportioned income in their possession distributable to her.[20]

Upon the assumption that the trustees had treated stock dividends as corpus, the trial judge, as appears from the quoted excerpts of his opinion, found that Matilda A. Foster, with knowledge of the facts, had acquiesced in the acts of the trustees. The falsity of this assumption has been already discussed. But the trial

[20] *Garrett* v. *Reid-Cashion Land etc. Co.*, 34 Ariz. 245, 270 Pac. 1044, 1052.

738

judge further failed to apply the correct rule in respect to ratification as between cestui and trustee.

Before a cestui que trust may be charged with knowledge it must appear that he possessed full knowledge of all of the material particulars and circumstances and was fully apprised of the effect of the acts ratified and of his legal rights in the matter. He must not only be acquainted with the facts but be apprised of the law and how the facts would be dealt with by a court of equity. "To establish a ratification by a cestui que trust, the fact must not only be clearly proved, but it must be shown that the ratification was made with a full knowledge of all the material particulars and circumstances, and also in a case like the present that the cestui que trust was fully apprised of the effect of the acts ratified, and of his or her legal rights in the matter. Confirmation and ratification imply to legal minds, knowledge of a defect in the act to be confirmed, and of the right to reject or ratify it. The cestui que trust must therefore not only have been acquainted with the facts, but apprised of the law, how these facts would be dealt with by a court of equity."[21] Not only was the evidence insufficient to show knowledge on the part of Matilda A. Foster of facts legally constituting a conversion by the trustees to corpus of unapportioned stock dividends distributable to her but the record is absolutely silent upon the knowledge that Matilda A. Foster possessed of the legal effect as to her, if any, of participating in the distribution of unapportioned stock dividends upon the respective occasions of the deaths of her sisters, Bathsheba M. Allen or Mary E. Foster.

---

[21] Adair et al. v. Brimmer et al., 74 N. Y. 539, 553. (See also In Re Long Island Loan & Trust Co., 87 N. Y. S. 65, 67; Gates v. Megargel, 266 Fed. 811, 820; Garrett v. Reid-Cashion Land etc. Co., 34 Ariz. 245, 270 Pac. 1044, 1052.)

(c) The exoneration of Matilda A. Foster from the charge of misrepresentation implies the conclusion that the trustees, in making distribution of unapportioned stock dividends to the heirs-at-law of income-takers, did not act in reliance upon anything said or done by Matilda A. Foster but were motivated in so doing by other considerations. They acted contrary to the advice of their attorneys and contrary to their attitude expressed in letters of May 4 and May 12, 1920. What brought about the *volte face* we do not venture to say.

Appellees, upon the assumption that the evidence upon the defenses of waiver and estoppel was conflicting, invoked the rule repeatedly enunciated by this court that upon appeals to the supreme court from decrees of circuit judges at chambers in equity the findings of the latter upon the facts are entitled to great weight. The evidence material to the defenses referred to was not conflicting. But assuming *arguendo* that the rule is applicable, it neither limits the scope of review nor imposes any restraint upon the power of this court, in the exercise of its appellate jurisdiction, to ascertain by an analysis of the evidence what the facts are and whether the findings have any evidence for their support. Where, as here, the findings of the trial judge that Matilda A. Foster waived her rights to unapportioned stock dividends and by her acts and conduct estopped herself and her legal representative after her death from asserting any claim thereto have no evidence for their support, the decree based upon such findings must be reversed. (See *Wery* v. *Pacific Trust Co.*, 33 Haw. 701.)

Finally as to the defense of laches. If available as a defense to the heirs-at-law, it has not been sustained. Holding as we do that as far as Matilda A. Foster is concerned the trustees never treated the stock dividends apportionable to her as principal of the estate of which

she was the income-taker, no obligation rested upon her to take any affirmative steps to reduce to possession the stock dividends distributable to her until there was an avowal by the trustees of an adverse interest therein. Where money or property, under the provisions of an express trust, is distributable by a trustee to a *cestui que* trust, it is not incumbent upon the *cestui* upon the accrual of the right of distribution to immediately insist upon the payment or transfer to him of the money or property subject to distribution. So long as his delay in asserting his rights is not prejudicial to the trustee, the latter cannot complain of the delay.[22] The *cestui* is entitled to rely upon the presumption that the possession of the trustee is for his benefit, that such possession is subject to the terms of the trust and that upon demand distribution will be made to him pursuant to and in conformity with the provisions of the trust. The possession of the trustees was consistent with and not in derogation of the title of Matilda A. Foster. Their possession was not adverse to her rights. Had the trustees denied the right of Matilda A. Foster to apportionable stock dividends and assumed ownership thereof, the defense of laches might apply. As long as a trust is a subsisting one and its existence is admitted by the acts and declarations of the parties, mere delay cannot bar recovery by the *cestui que* trust of income to which he is entitled under the terms of the trust. The situation as between trustee and *cestui que* trust is likened to tenants in common in respect to necessity of ouster before the statute of limitations begins to run. Where, as here, the trust is an express trust continuing and subsisting as to the parties and the trustee does nothing adverse to the title of the *cestui que* trust, delay

---

[22] *Brinkley & Wife* v. *Willis, et al.*, 22 Ark. 1, 6; *Buckner's Admr.* v. *Martin*, 158 Ky. 522, 165 S. W. 665.

on the part of the *cestui* to assert his rights does not constitute laches.[23]

Moreover, it affirmatively appears that the trustees themselves have in part been responsible for and substantially contributed to the delay upon which they predicate the defense of laches. It was the duty of the trustees upon their receipt to make apportionment of stock dividends in accordance with the rule enunciated in *Evans* v. *Garvie, supra,* and to distribute to Matilda A. Foster the number of shares to which she was entitled under the terms of the trust created for her benefit.[24] To have apportioned stock dividends would have been to deprive the trustees of the protection that possession afforded against the claims of heirs-at-law. They apparently were perfectly willing to make apportionment if some-one else—either life tenants or remaindermen or even strangers to the trust—brought about a determinative judicial decree. Of whatever delay Matilda A. Foster was guilty the trustees were in the main responsible therefor and substantially contributed thereto. Where a party or the privy of a party interposing the defense of laches has been responsible for and substantially contributed to the delay upon which the defense is predicated, he is precluded from taking advantage of such defense.[25]

Nor does it appear that there has been any change in the position of the trustees to their detriment.

Holding as we do that the principles enunciated in

---

[23] *Kane* v. *Bloodgood,* 7 John. Ch. 89 (N. Y.) ; *Robinson* v. *Hook,* 4 Mason 139, 152, Fed. Cas. # 11956; *Baker et ux.* v. *Whiting et al.,* 3 Sum. 475, 486, Fed. Cas. # 787; *Oliver* v. *Piatt,* 3 How. 333, 411 (U. S.) ; *Speidel* v. *Henrici,* 120 U. S. 377; *Merritt Oil Corporation* v. *Young,* 43 F. (2d) 27, 31.

[24] *Estate of Allen, ante,* p. 501.

[25] 4 Pom. Eq. Jur. § 35; *Northern Pac. Ry. Co.* v. *Boyd,* 177 Fed. 804; *Taylor* v. *Salt Creek Consol. Oil Co., et al.,* 285 Fed. 532; *Spiller* v. *St. Louis & S. F. R. Co.,* 14 F. (2d) 284; *Merritt Oil Corporation* v. *Young,* 43 F. (2d) 27, 32.

*Carter* v. *Crehore, supra,* and *Evans* v. *Garvie, supra,* control, no additional expense will be incurred by the trustees in now determining what was their duty to determine at the respective times upon which the stock in question was acquired. Nor has the lapse of time prejudiced them in respect to evidence upon which apportionment may be computed. According to the allegations of the complaint, this evidence is readily available. The petitioners in their bill not alone allege all of the facts necessary to apportionment but actually compute the apportionment to be made and set forth the number of shares of stock in the stock in question to which legal representatives of Matilda A. Foster would be entitled in the event that the principles stated in the case of *Evans* v. *Garvie, supra,* apply. While the complaint is made, nothing has been shown from which we may conclude that any additional tax burden will be imposed upon the trustees or upon the heirs-at-law of Matilda A. Foster by reason of the delay in making apportionment.

In conformity with the views herein expressed, the decree appealed from is reversed and the cause remanded for further proceedings consistently therewith.

*Thompson, Wood & Russell* for the ancillary administrator of the estate of Matilda A. Foster, deceased.

*A. Perry* for certain of the respondents and T. Edgar Robinson, guardian of Pualeilani Jaeger.

*Stanley, Vitousek, Pratt & Winn* for Marion Jaeger Worthington.

*M. K. Ashford* and *W. H. Heen* for Lucy K. Ward and Kathleen Ward.

*Smith, Wild, Beebe & Cades* for Lucy H. McWayne.

*R. J. O'Brien* for George De La Nux.

*Anderson, Marx, Wrenn & Jenks* for trustees.

*Robertson, Castle & Anthony* for James E. Jaeger, Jr., and James H. Wolters, filed no brief.